[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 25, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-15600
Non-Argument Calendar

_____

D. C. Docket No. 07-21095-CV-AJ

ASENCION LUNA,

Plaintiff-Appellant,

versus

WALGREEN COMPANY,
d.b.a. Walgreens,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 25, 2009)

Before TJOFLAT, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

In this case, Asencion Luna seeks relief against Walgreen Company

("Walgreens") under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq..  In her complaint, she alleged that Walgreens discriminated and retaliated against her, in violation of the ADA, on the theory that (1) she suffered from back and knee problems, which required her to sit at work, (2) she had a record of this impairment, (3) Walgreens regarded her as having a disability, (4) Walgreens allowed her to use a chair for several years prior to her separation from the company, and (5) Walgreens both actually and constructively discharged her.  On Walgreens's motion for summary judgment made at the close of discovery, the district court, after considering the evidence in the light most favorable to Luna,[1] found no merit in her discrimination and retaliation claims and granted Walgreens final judgment.  Luna now appeals the judgment.  We affirm.

## I.

In her brief on appeal, Luna argues that the district court erred in granting summary judgment on her disability discrimination claim because the evidence created a material issue of fact as to whether Walgreens regarded her as having an impairment that substantially limited her ability to stand while working and whether Walgreens accommodated such impairment for five years.

"Under the controlling law in this Circuit, the burden-shifting analysis of

---

[1]    See Holly v/ Clairson Indus., L.L.C., 492 F.3d 1247 (11th Cir. 2007).

Title VII employment discrimination claims is applicable to ADA claims."  Id. (internal quotation omitted).  Under this burden-shifting analysis, the plaintiff must first establish a prima facie case.  "To establish a prima facie case of discrimination under the ADA, a plaintiff must show: (1) [s]he is disabled; (2) [s]he is a qualified individual; and (3) [s]he was subjected to unlawful discrimination because of [her] disability."  Id. at 1255-56.  The ADA and the regulations define "disability" as: (1) a physical or mental impairment  that substantially limits one or more of the major life activities of the individual; (2) a record of such impairment; or (3) being regarded as having an impairment.  42 U.S.C. §§ 12102 (1) and (2); 34 C.F.R. 104.3(j)(1);  Carruthers v. BSA Adver., Inc., 357 F.3d 1213, 1215 (11th Cir. 2004). The Equal Employment Opportunity Commission ("EEOC") regulations interpreting the ADA:

> have explained that to be 'regarded as having such an impairment' means that an individual: (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation; (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (3) Has none of the impairments defined in paragraph (h)(1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment.

D'Angelo v. Conagra Foods, 422 F.3d 1220, 1228 (11th Cir. 2005) (citing 29

C.F.R. § 1630.2(l)).

For a plaintiff to prevail under the "regarded as" theory of disability, she must establish two points: (1) that the perceived disability involves a major life activity, and (2) that the perceived disability is "substantially limiting" and significant. Sutton v. Lader, 185 F.3d 1203, 1208 (11th Cir. 1999). "Standing" is a major life activity. 42 U.S.C. § 12102(2)(A).

Luna failed to establish that Walgreens regarded her as having a disability that "substantially limited" her ability to stand, and therefore failed to satisfy the second point. In 2001 and again in 2004, Luna provided Walgreens with a letter excusing her from jury duty because she suffered from a degenerative disc disease, but neither letter indicated that she was disabled or needed to sit at work. On August 7, 2006 (seven days before she left Walgreens), she gave the manager of the store where she was working, Alfa King, a note from Dr. Olivia Graves, her physician, stating that she needed to sit at work due to her degenerative joint disease, herniated discs, and knee problems.[2] On receiving the note, King told Luna that she, King, would review the note with Jorge Morales, her district manager and thereafter would get back to her. Luna concedes that the doctor's note was the first real notice the company received that she needed to sit at work.

---

[2] Nothing in Dr. Graves's note indicated how long, or for what intervals, Luna was either able to, or not able to, engage in any physical activity.

This concession is consistent with testimony Walgreens employees gave on deposition; they said that they did not perceive Luna as having a disability, much less one that substantially limited her ability to stand.

Luna's argument that Walgreens accommodated her disability for five years by providing her with a chair is not supported by the record. In her deposition, Luna conceded that the chair was not placed in the pharmacy because of any specific request that she made. In an August 13, 2006 email to Jorge Morales, Luna formally requested an accommodation and asked for a response to her request within five days. She infers from Morales's failure to respond before the five-day period expired that the company regarded her as being substantially limited in her ability to stand. In our view, that inference cannot be drawn.

In sum, we conclude that, when considered in a light most favorable to Luna, the evidence did not establish that Walgreens regarded Luna as disabled, as having a disability that "substantially limited" her disability to stand.

## II.

Luna contends that the district court, in rejecting her retaliation claim, erred in considering only her actual and constructive discharge theories and ignored her claim that Walgreens's conduct had a materially adverse effect on her under Burlington Northern and Santa Fe Ry. Co. v. White, 543 U.S. 53, 68, 126 S.Ct.

5

2405, 2415, 165 L.Ed.2d 345 (2006). Luna believes that the district court erred in failing to consider Walgreens's conduct after removing the chairs from the pharmacy on August 2, 2006, but prior to her leaving the company twelve days later, which forced her to work throughout the day under intolerable pain while other employees were allowed to use a chair temporarily. Luna argues that the company's conduct would, under the Burlington standard, dissuade a worker in her situation from requesting a reasonable accommodation.

"The ADA provides that 'no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by the ADA or because such individual made a charge . . . under the ADA.'" Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1260 (11th Cir. 2001) (quoting 42 U.S.C. § 12203(a)). In order to show a prima facie case of retaliation, a plaintiff must show that: (1) she engaged in a statutorily protected expression; (2) she suffered an adverse employment action; and (3) there was a causal link between the adverse action and her protected expression. Lucas, 257 F.3d at 1260. The Supreme Court has interpreted the second prong as requiring a plaintiff to show that "a reasonable employee would have found the challenged action materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington, 543 U.S. at 68, 126 S.Ct. at

6

2415 (quotations and citations omitted) (announcing "materially adverse" element for Title VII claims). Under Burlington, "the type of employer conduct considered actionable has been broadened from that which adversely [a]ffects the plaintiff's conditions of employment or employment status to that which has a materially adverse effect on the plaintiff, irrespective of whether it is employment or workplace-related." Crawford v. Carroll, 529 F.3d 961, 973 (11th Cir. 2008).

However, an employee still may satisfy the second prong by showing an actual or constructive discharge. "[T]he inquiry as to whether actual termination has occurred involves analysis of the employer's intent." Thomas v. Dillard Dep't Store, 116 F.3d 1432, 1434 (11th Cir. 1997). "Whether an actual termination has occurred is determined in light of the particular circumstances of the controverted job action." Id. ("An actual discharge . . . occurs when the employer uses language or engages in conduct that 'would logically lead a prudent person to believe his tenure has been terminated.'") (citing Chertkova v. Connecticut General Life Ins. Co., 92 F.3d 81, 88 (2d. Cir. 1996)). In Garrett v. Univ. of Ala. at Birmingham Bd. of Trs., 507 F.3d 1306, 1316 (11th Cir. 2007), we reasoned that a supervisor's statement, that the plaintiff "did not look well and she should leave work and go home," did not constitute an adverse employment action, but only a statement of concern for the employee's fatigue at work.

7

"To prove a constructive discharge, a plaintiff must demonstrate that working conditions were so intolerable that a reasonable person in her position would have been compelled to resign." Griffin v. GTE Fla., Inc., 182 F.3d 1279, 1283 (11th Cir. 1999). Unless the employer is given sufficient time to remedy the situation, a constructive discharge generally will not be found to have occurred. Kilgore v. Thompson & Brock Mgmt., Inc., 93 F.3d 752, 754 (11th Cir. 1996).

The district court correctly held that, given the record before it, Luna had not established a prima facie case of retaliation. While her chair request was a protected expression and thus satisfied Lucas's first prong, there is no evidence in the record to the effect that she suffered a materially adverse employment action, Lucas's second prong. First, Walgreens neither actually discharged nor constructively discharged Luna. During the morning of August 14, 2006, Luna went to the EEOC office and told an investigator there that she was going to meet with her supervisor that afternoon to discuss returning to work with a reasonable accommodation. At 2:05 p.m., she came to work and requested a chair because she had knee and back pain. She told Patricia Brito, the store's assistant manager, that King, the manager, had not authorized her to use a chair, and Brito's response was that she could not have a chair. She said that King instructed her not to allow employees to use a chair and that if Luna could not stand, she should "punch out

8

and leave," which she did.  Luna's discharge theory relies on the belief that when Brito said this, Brito was firing her.  Luna concedes, however, that Brito lacked the authority to fire her, and the words "punch out and leave" would not lead a reasonably prudent person to believe that she was being fired.  See  Garrett, 507 F.3d at 1306; Thomas, 116 F.3d at 1434.  Moreover, Luna admitted that no one at Walgreens ever terminated her employment.

Second, the district court did not err in failing to apply her claim under the relaxed Burlington standard.  The court looked to Burlington, but found that Luna had presented but two arguments, neither of which had merit: actual and constructive discharge.

III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.