**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0414n.06

No. 09-3164

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Jul 12, 2010**
LEONARD GREEN, Clerk

RASHAWN MANIGAN,                )
                                )
        Plaintiff-Appellant,    )    **ON APPEAL** FROM THE
                                )    UNITED STATES DISTRICT
v.                              )    COURT FOR THE SOUTHERN
                                )    DISTRICT OF OHIO
SOUTHWEST OHIO REGIONAL         )
TRANSIT AUTHORITY,              )
                                )    **O P I N I O N**
        Defendant-Appellee.     )

_____

**Before:  MARTIN, BOGGS, and WHITE, Circuit Judges.**

   **HELENE N. WHITE, Circuit Judge.**  Plaintiff Rashawn Manigan appeals the district court's

order granting summary judgment to his former employer, defendant Southwest Ohio Regional

Transit Authority (SORTA), and dismissing his suit brought under the Americans with Disabilities

Act (ADA), 42 U.S.C. §12101 *et seq.*, and Ohio's Civil Rights Act, OHIO REV. CODE ANN. §

4112.02(A).  We AFFIRM.

**I**

   The facts set forth by the district court are not disputed:

        In October of 2003, Plaintiff Rashawn Manigan began working as a bus driver
    for Defendant SORTA.  Since 1992, Manigan has had an artificial right knee and
    partially artificial right hip as the result of a car accident.  In 2005, Manigan was
    wearing knee braces on both knees except when resting at home.  Manigan was also
    wearing an ankle/foot orthosis on his left ankle and foot, and was not able to walk
    more than a few feet without this appliance.  Manigan had also been using a cane
    since his accident, and needed it to walk almost every day.  Even with these

appliances, Manigan was unable to walk more than approximately fifty yards without stopping, and had to walk at a pace slower than that of an average person.

SORTA's bus drivers are represented by a union. Under the collective bargaining agreement between SORTA and the union, seniority is based on date of hire. Drivers are able to select their work assignments four times per year based upon seniority. Drivers can pick to be a "regular operator" or a "sub-operator." A sub-operator is used to cover for regular operators. Sub-operators pick their work assignments in order of seniority on a weekly basis. Sub-operators can pick from either the "Hold-down" or "Rotating Board." The Hold-down Board consists of the runs of regular operators who are on leave. On the Rotating Board, drivers pick their days off and are then assigned runs on a daily basis.

Manigan worked as a sub-operator and preferred to work from the Rotating Board because he was rarely assigned a run which required him to drive more than eight hours per day. Manigan was restricted by his doctor from driving more than eight hours per day. In 2004, Manigan's supervisor was Robert Broadnax. Broadnax ensured that Manigan did not drive more than eight hours by allowing Manigan to exchange runs with another driver assigned to a shorter run at the same time. If Manigan could not exchange his run, Manigan would call for "sick relief" and Broadnax would find someone to finish out Manigan's route which was in excess of eight hours.

On January 27, 2005, Manigan's doctor issued a note which stated: "Patient may not drive a bus more than 8 hours a day due to knee condition, until further notice." Manigan claims that his new supervisor, Arnold Isham, was not accommodating his work restriction as Broadnax had done. On February 16, 2005, Manigan met with Vaughn Davis, the Director of Human Resources. Davis recommended that Manigan select a regular run that complied with his doctor's restriction in the upcoming February divisional pick. Davis repeated this suggestion in a subsequent phone conversations [*sic*]. According to Manigan, such a route was not available because of his seniority. SORTA disputes this contention, and points to evidence showing that there were four drivers with lower seniority than Manigan who chose regular runs with driving times less than eight hours.[1]

---

[1]In a footnote here, the district court stated:

For the first time, in his Second Declaration attached to his Response in Opposition to SORTA's Motion for Summary Judgment, Manigan states that the reason he did not pick these runs was because he missed his opportunity to make his pick. In his

At the same time, Manigan informed Isham that he would need to take medical leave to have knee surgery. Manigan provided Isham with paperwork from Manigan's doctor which stated that Manigan would need to be on leave from April 22, 2005 until July 22, 2005.

On March 21, 2005, Manigan wrote a letter to Davis acknowledging their initial meeting on February 16, 2005 and the subsequent telephone conversations regarding the accommodation of his eight-hour driving restriction. In the letter, Manigan states that his requested accommodation is an "assignment to a split run, or an extra run in combinations."[2] Manigan also states: "Your solution was for me to try and pick a split run, or a route with a layover which would allow me to stand and stretch my legs at the layover is not a practical solution at this time." [*sic*]

On April 19, 2005, Manigan filed a grievance, claiming that SORTA was refusing to accommodate his doctor's restriction and make an ADA accommodation.

In May of 2005, Isham asked Manigan to undergo a fitness for duty evaluation. The doctor who performed the evaluation agreed with Manigan's doctor that he should not drive a bus more than eight hours per day.

On May 2, 2005, Isham sent a letter to Manigan stating:

---

Second Declaration, Manigan explains that on February 16, 2005, he was scheduled to make his quarterly pick for the period of March to June of 2005. Manigan states that he had a meeting scheduled with Davis that afternoon. Manigan states that when the meeting ended, he went to make his pick, but was told that he had already been assigned to be a sub-operator, and they had moved on to the next pick. Manigan made no mention of "missing" his pick in his deposition.

\* \* \*

After a motion for summary judgment has been made, a party may not create a genuine issue of material fact by filing an affidavit that contradicts earlier deposition testimony. *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986). Moreover, SORTA has presented the supplemental affidavit of John Schmidt which states that in the event that there was a problem with Manigan's pick, there was a process called "backing up," where a union representative could have helped to "back up" the process to correct the problem.

[2]Manigan's letter stated that he was not seeking a light duty assignment, but rather, to be assigned to a split run, or a combination of extras [runs], ideally originating and ending at the division garage.

> I spoke with Vaughn Davis regarding the ADA accommodation and he stated he informed you that you do not have a **valid** ADA issue.
>
> I denied the doctor's note <u>with the restriction</u> on it, due to The Metro does not have any type of light or restricted duty.
>
> Grievance denied for the reasons stated above.
>
> As I mentioned above The Metro doesn't have any type of light or restricted duty, yet you have offered in this grievance that you're under a doctor's care with restriction. I sent you to The Metro's doctor, who after your physical exam and speaking with your doctor confirmed you are under <u>restriction</u> preventing you from performing your duties. I have no choose [sic] but to take you **out of service** until you summit [sic] a note stating that you can work without any restriction.

SORTA denied the grievance at each step, and the Union voted not to arbitrate the grievance.

> On May 6, 200[5], Isham sent a letter to Manigan informing him that his leave for his knee surgery had been approved and he would be on leave under the Family Medical Leave Act until July 22, 2005. However, Manigan elected to not have the surgery.
>
> During the next quarterly pick in May of 2005, Manigan selected a run which required less than eight hours of driving time. On June 7, 2005, Manigan's doctor issued a note which stated: "Able to return to regular duty as a Metro bus driver." Manigan returned to work on June 18, 2005. [R.E. 74/Opinion & Order filed 1/23/09, pp. 1-6. Internal citations omitted.]

The district court granted SORTA's motion for summary judgment, concluding that Manigan failed to present evidence sufficient to establish that SORTA discriminated against him by failing to provide a reasonable accommodation.[3]

---

[3]The district court's opinion and order states in pertinent part:

> Here, Manigan attempts to force SORTA to provide a specific accommodation in the face of SORTA's offer of another reasonable accommodation.

4

**II**

This court reviews the grant of summary judgment *de novo*. *Nance v. Goodyear Tire &*

*Rubber Co.*, 527 F.3d 539, 546 (6th Cir. 2008).

> Summary judgment will be affirmed if "the pleadings, the discovery and disclosure
> materials on file, and any affidavits show that there is no genuine issue as to any
> material fact and that the movant is entitled to judgment as a matter of law." Fed. R.

> Manigan met with Davis in February of 2005. At that time, Davis told Manigan to
> find a run based on his seniority which would meet his eight-hour restriction.
> SORTA points to evidence showing that there were regular runs available in the
> February 2005 pick which would have made it possible for Manigan to stay within
> his driving restriction. The Court finds that such a run would have been a reasonable
> accommodation. Manigan instead picked to be a sub-operator. (Schmidt Aff. 16)
> Because Manigan rejected the regular runs which met his eight-hour driving
> restriction, he is no longer considered a qualified individual with a disability.
>
> Manigan relies heavily on the May 2, 2005 letter from Isham denying his
> grievance to argue that SORTA refused to accommodate his disability. However,
> this letter was sent to Manigan after he had already been offered and rejected Davis'
> reasonable accommodation of picking a run in the February 2005 pick which met his
> eight-hour driving restriction. By May, SORTA chose to accommodate Manigan in
> a different manner, which was to take him "out of service" and place him on medical
> leave. While on leave, Manigan was able to select a run which met his eight-hour
> restriction in the next quarterly pick. . . .
>
> Manigan also argues that SORTA could have continued to accommodate him
> in the manner Broadnax had accommodated his eight-hour restriction. This argument
> assumes that SORTA was required to accommodate him in this manner . . . .
> . . . .
> As stated above, Broadnax's proposed accommodation circumvented SORTA's
> collective bargaining agreement with the union. As such, SORTA was not required
> to provide this accommodation. Therefore, the Court finds that Manigan has not
> presented sufficient evidence that SORTA discriminated against him by failing to
> provide a reasonable accommodation. Accordingly, Manigan is not entitled to
> summary judgment on the issue of liability, and SORTA is entitled to summary
> judgment on Manigan's claim under the ADA. [R.E. 74, pp. 13-15, internal citations
> to record omitted.]

Civ. P. 56(c). If "a reasonable jury could return a verdict for the nonmoving party," summary judgment for the moving party is inappropriate. In reviewing the district court's decision, we draw all justifiable inferences in favor of the non-moving party.

*McKnight v. General Motors Corp.*, 550 F.3d 519, 522 (6th Cir. 2008) (internal citations omitted).

"The ADA prohibits employers from discriminating against qualified individuals with disabilities in regard to hiring, advancement, discharge, or other terms, conditions, or privileges of employment." *Bratten v. SSI Services, Inc.*, 185 F.3d 625, 632 (6th Cir. 1999) (citing 42 U.S.C. § 12112(a)). To establish a prima facie case of discrimination under the ADA, a plaintiff must show 1) that he is an individual with a disability, 2) who was otherwise qualified to perform a job's requirements, with or without reasonable accommodation, and 3) who suffered an adverse employment action on the basis of disability. *See Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008).

### III

We first observe that we agree with the district court that Manigan presented sufficient evidence that he was disabled within the meaning of the ADA.[4] We thus turn to the other aspects of his ADA claim.

### A

Although the district court's opinion is addressed to the accommodation aspects of the case, Manigan argues that this is not a failure-to-accommodate case, and that SORTA's discriminatory act

---

[4]As the district court concluded, Manigan presented ample evidence that his problems with his knees substantially limited him in the major life activity of walking. *See* 29 C.F.R. § 1630.2(i); *see also Talley*, 542 F.3d at 1107 (walking considered a major life activity under the ADA).

was placing him on leave in May 2005, solely because his disability imposed a medical restriction, when, in fact, he was able to do his job. He argues that before he was placed on leave he was doing his job, and that there was no reason he could not have continued to do his job. In his words: "Defendant removed a disabled employee from his job - a job he was performing satisfactorily, and wanted to continue to do - simply and solely because he had a medical restriction. The issue presented to the Court is whether that action is legal under the ADA." [Emphasis in original.]

Thus, the focus of Manigan's claim is Isham's May letters placing him on medical leave. SORTA argues that it placed him on leave because he was unable to perform the essential functions of his bus-driver position. Manigan argues that SORTA failed to carry its burden of establishing that driving in excess of eight hours a day was an essential function of Manigan's bus-driver position. He cites the many times during the case that SORTA affirmatively asserted and acknowledged that a person could work as a bus driver without having to drive more than eight hours in a day. Indeed, it is undisputed that some of the routes did not require that the driver drive more than eight hours a day. Manigan also relies on testimony that drivers were able to call in sick, and that Broadnax relieved drivers with "female, marital, and drug and alcohol problems."

**B**

Regarding the second element of a prima facie case, a "qualified individual" is an individual with a disability "who, with or without reasonable accommodation, can perform the essential functions" of his position. 42 U.S.C. § 12111(8). "The term essential functions means the fundamental job duties of the employment position the individual with a disability holds . . . ." 29 C.F.R. § 1630.2(n)(1). The employer has the burden of proving that a challenged job criterion is an

7

essential function.  *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 869 (6th Cir. 2007).  A job function is essential if its removal would "fundamentally alter" the position. *Kiphart v. Saturn Corp.*, 251 F.3d 573, 584 (6th Cir. 2001) (quoting 29 C.F.R. § 1630.2(n)).  To determine whether a particular function is "essential" courts consider the following list of non-exhaustive factors:

> (i)  The employer's judgment as to which functions are essential;
> (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
> (iii) The amount of time spent on the job performing the function;
> (iv) The consequences of not requiring the incumbent to perform the function;
> (v)  The terms of a collective bargaining agreement;
> (vi) The work experience of past incumbents in the job; and/or
> (vii) The current work experience of incumbents in similar jobs.

*Hoskins v. Oakland County Sheriff's Dep't*, 227 F.3d 719, 726 (6th Cir. 2000) (quoting 29 C.F.R. § 1630.2(n)(3)).

## C

SORTA presented evidence that driving more than eight hours a day *when the assigned route requires* is an essential function of the SORTA driver position.  SORTA submitted the affidavit of its Street Operations Manager, John Schmidt, a 30-year employee, who in 2005 was Sector Manager at SORTA's Queensgate Division, where Manigan worked.  Schmidt's affidavit, section 17 of the collective bargaining agreement (CBA), and the Board Rules section on overtime work make clear that the CBA required that all drivers (whether regulars or subs) work more than eight hours a day when needed or required to do so.  Although Manigan is correct that many routes had stated driving times ("platform times") of less than 8 hours, Schmidt's affidavit attested that drivers had to work more than 8 hours at times, whether because of the runs they chose, absenteeism, or other factors.

Moreover, given the CBA's established system under which bus drivers chose routes in order of seniority (Manigan had low seniority–having begun employment in 2003), SORTA could not assign or set aside *any specific routes* for Manigan under the CBA. Manigan seeks to avoid consideration of the assigned route as an element of the job description by arguing that the CBA does not require SORTA to remove an employee who is doing his job. Nevertheless, the CBA does set forth the manner in which routes are chosen and assigned, and SORTA was not required to deviate from the prescribed scheme.

Manigan also relies on the undisputed evidence that both the CBA and SORTA's actual practice provided for relief for bus drivers who are unable to complete a shift. Manigan contends that because the CBA mandated that an adequate supply of extra drivers be maintained at all times, SORTA had more than enough backup drivers to relieve him whenever necessary. Broadnax did testify that he often helped Manigan when he requested relief, including by arranging for him to be relieved. However, Broadnax also testified that there was no way to guarantee that relief would be available because there may not be enough manpower on any given day, and that there had been times that Manigan could not be relieved and thus had to drive more than eight hours. Manigan also points to Broadnax's testimony that providing relief for Manigan never caused an interruption in service to SORTA's customers. However, Broadnax also testified that, had Manigan not worked more than eight hours on the days that no relief was available, disruptions to the riding public would have occurred. Further, Schmidt's affidavit stated that SORTA had never excused drivers on an ongoing basis from driving more than eight hours and that to do so could cause disruptions in service to the public and/or grievances being filed. Thus, Manigan's arguments do not undermine the conclusion

9

that the ability to drive more than eight hours when the assigned route requires is an essential function of the bus-driver position.

In sum, SORTA presented evidence of its judgment of functions essential to bus-driver positions, the consequences of not requiring the incumbent to perform the function when the assigned route required, and the terms of the CBA. *See* 29 C.F.R. § 1630.2(n)(3)(i), (iv), and (v). And, Manigan did not provide evidence to controvert that working more than eight hours a day when the assigned route required was an essential function of all SORTA bus driver positions.

**D**

The record is clear that, during 2004, Broadnax had "accommodated" Manigan by, when possible, permitting him either to switch runs with other drivers or be relieved in the field. However, this was not the backdrop in May 2005, the only time at issue in this case. In 2005, when Manigan's doctor again restricted him to driving no more than eight hours a day, Manigan asked Davis for an accommodation and informed Isham that he would need to take medical leave to have knee surgery. He also filed a grievance for failure to accommodate his need to drive no more than 8 hours a day.

This backdrop notwithstanding, Manigan argues that he could perform his job with or without reasonable accommodation when he was placed on leave in May 2005, that he could have continued to do so, and that SORTA violated the ADA by requiring him to take a leave of absence. It is unclear whether Manigan asserts that he was able to drive more than 8 hours when required. Any such argument would fail, however, in light of his doctor's restrictions.

To the extent that Manigan argues that the fact that he had performed his job shows that he was able to do so, he fails to account for the fact that the requirement of the job with respect to the

hours of driving changed every time he was assigned a new route. If the route did not require more than eight hours of driving, no accommodation was necessary. Manigan does not assert that the routes he was assigned to in May 2005 did not require that he drive more than eight hours. At best he argues that he could have been assigned such routes or that he could have been relieved when necessary. But because the ability to drive more than eight hours when the route requires is an essential function of the position, these can only be characterized as accommodation arguments, which Manigan disavows, and which the district court correctly rejected.[5]

We thus conclude Manigan failed to show that he was otherwise qualified to perform the essential functions of his position with or without reasonable accommodation, and SORTA was entitled to summary judgment.

**IV**

Manigan's claim under Ohio's civil rights law was properly dismissed as well, because, as the district court noted "Given the similarity of the language used in the ADA and Chapter 4112, the Ohio Supreme Court has held that federal regulations and case law are applicable to disability

---

[5]Further, an employee claiming that he would have been capable of performing his job had he been accommodated has the initial burden of having proposed an accommodation and showing that the accommodation is objectively reasonable. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1183 (6th Cir. 1996) ("[T]he disabled individual bears the initial burden of proposing an accommodation and showing that *that* accommodation is objectively reasonable.") Part of this burden is that a plaintiff show that he requested the specific accommodation; a plaintiff may not rely on accommodations that he did not request. *See Virts v. Consol. Freightways Corp. of Delaware*, 285 F.3d 508, 518 (6th Cir. 2002). Manigan's requested accommodation in his letter to Davis of March 21, 2005, was an assignment to a split run, or a combination of extra runs, ideally originating and ending at the division garage. Because Manigan did not request in 2005 that he be "accommodated" in the fashion that he had been under Broadnax, his claim fails on this basis as well. *Id.*

discrimination claims brought under Chapter 4112." R.E. 74, p. 15, citing *Columbus Civil Serv.*

*Comm. v. McGlone*, 697 N.E.2d 204, 206-207 (Ohio 1998).

We AFFIRM the grant of summary judgment to SORTA.