RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0344p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
───────────────

TAWNA BOWLES,

　　　　　　　*Plaintiff-Appellant*,

　　　*v.*

SSRG II, LLC, dba Chicken Salad Chick,

　　　　　　　*Defendant-Appellee*.

⎫
⎪
⎪
⎬　No. 25-5329
⎪
⎪
⎭

───────────────

Appeal from the United States District Court for the Eastern District of Kentucky at Covington.
No. 2:23-cv-00146—Danny C. Reeves, District Judge.

Decided and Filed:  December 17, 2025

Before:  BOGGS, BUSH, and READLER, Circuit Judges.
───────────────

## COUNSEL

**ON BRIEF:**  Stephen E. Imm, Samantha B. Isaacs, FINNEY LAW FIRM, LLC, Cincinnati, Ohio, for Appellant.  Mark G. Arnzen, Jr., Dylan-Forrest F. Greene, DINSMORE & SHOHL, LLP, Cincinnati, Ohio, for Appellee.

───────────────

## OPINION
───────────────

READLER, Circuit Judge.  Chicken Salad Chick, a fast-casual restaurant chain, hired Tawna Bowles to serve as a cashier/service-team member at a franchise location in northern Kentucky.  Bowles, who suffers from arthritis in her knees, requested that she be allowed to sit for five minutes after every ten minutes that she stood while on the job.  When Chicken Salad Chick denied her request, Bowles sued the restaurant chain under the Americans with Disabilities Act of 1990 (ADA) and the Kentucky Civil Rights Act (KCRA).  In her complaint,

Bowles alleged that the company failed to accommodate her disability and refused to engage in the ADA's interactive-accommodation process. The district court granted summary judgment to Chicken Salad Chick. Because Bowles's requested accommodation is unreasonable as a matter of law and her interactive-process claim depends upon a viable reasonable-accommodation claim, we affirm.

I.

Founded in 2008 in Auburn, Alabama, Chicken Salad Chick has carved out a unique space in the restaurant industry. With a menu focused on serving varieties of freshly made chicken salad, the restaurant chain now includes over 300 franchise locations across the United States. *See About Chicken Salad Chick*, Chicken Salad Chick, https://perma.cc/7NDJ-3HSL. Each location is staffed by a "manager" who oversees a group of "team members." Some team members are informally referred to as "cashier" or "service" team members. The position filled by those team members is front of house, *see Jones v. Gulf Coast Rest. Grp.*, 8 F.4th 363, 366 n.2 (5th Cir. 2021) (defining front of house as the part of a restaurant that deals directly with customers), which differentiates the role from those team members who work behind the scenes to craft the restaurant's signature menu items.

The cashier/service role has many aspects. To start, as the name implies, cashier/service-team members are expected to operate a point-of-sales system for taking customer orders, both dine-in and carry-out. But those team members are also responsible for stocking the restaurant's drink station as well as the refrigeration unit, which houses premade cartons of chicken salad. The position also must expedite food orders, which includes taking food from the prep window adjacent to the kitchen as well as preparing beverages and then delivering those items to customers, whether at checkout or at their table. And to maintain the guest area, cashier/service-team members are expected to clean tables, vacuum, take out trash, and maintain the cleanliness of the customer bathrooms. Given the nature of the restaurant, all Chicken Salad Chick team members are understood to operate in a "fast-paced environment" where effective multitasking and "well-paced mobility" for the "duration of the workday" are required skills. R. 34-2, PageID 120.

Tawna Bowles applied for a cashier/service-team member position at the Chicken Salad Chick location in Crestview Hills, Kentucky. Bowles suffers from arthritis in her knees. During her interview, she disclosed that she had difficulty standing for a long period of time and thus would require an unspecified amount of rest while working. That disclosure did not derail Bowles's candidacy—Chicken Salad Chick told Bowles she was hired before the interview concluded. And soon thereafter, the company sent her various onboarding documentation to complete for an expected start date of Monday, January 2, 2023. Bowles submitted her onboarding materials a few days before her start date. In those papers, Bowles indicated that she needed to be able to "sit down when needed" or "sit and work." R. 34-5, PageID 132.

When Bowles arrived for work, she was told by management that she could not start due to a "paperwork issue." R. 40, PageID 209. The issue concerned her accommodation request. The morning of her ostensible first day, her request had triggered a message to Mary Lou Atkins, Chicken Salad Chick's Vice President of Human Resources. Atkins, in turn, had notified the manager overseeing the Crestview Hills restaurant that Bowles could not begin until her request was resolved. Atkins called Bowles to request medical documentation of her condition. Bowles later obtained a note from her doctor, which asked that Bowles be "supplied a chair for standing limitations due to knee arthritis." R. 34-14, PageID 170. Eventually, the note made its way to Atkins. Atkins, however, asked for more specifics, namely, how long Bowles could stand and how often she would need to sit, and for how long. Bowles called Atkins in early February, at which point Bowles sought an accommodation where she "could . . . stand for ten minutes at a time and then would need to sit for five minutes . . . ." R. 40, PageID 213. Atkins informed Bowles that Chicken Salad Chick could not accommodate her specific request and likewise did not have a position for which she could continually sit.

This series of events culminated in Bowles suing the company. She alleged that Chicken Salad Chick violated both the ADA and the KCRA by (1) failing to afford her an accommodation of being able to "sit for a duration of five minutes after every ten minutes of standing," R. 5, PageID 14, and (2) refusing to engage in an interactive process after she proposed her reasonable accommodation. Following discovery, Chicken Salad Chick moved for summary judgment, which the district court granted. Bowles's timely appeal followed.

II.

Bowles faults the district court for granting summary judgment to Chicken Salad Chick on both her federal and state reasonable-accommodation and interactive-process claims. While Bowles's claims arise separately under the ADA and the KCRA, the latter is the state-law vehicle for executing protections that the former provides. *See Barnett v. Cent. Ky. Hauling, LLC*, 617 S.W.3d 339, 343 (Ky. 2021). We therefore follow our general practice of considering the ADA and KCRA claims in one fell swoop. *See Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 661, 669 (6th Cir. 2020); *Bryson v. Regis Corp.*, 498 F.3d 561, 574 (6th Cir. 2007). We review de novo the district court's award of summary judgment, viewing the facts and all reasonable factual inferences in Bowles's favor. *Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 839 (6th Cir. 2018) (citing *Gillis v. Miller*, 845 F.3d 677, 683 (6th Cir. 2017)). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A.

1. Begin with Bowles's failure-to-accommodate claim. The ADA prohibits disability discrimination in the form of a failure to make "reasonable accommodations" for "an otherwise qualified individual with a disability . . . ." 42 U.S.C. § 12112(a), (b)(5)(A). Bowles alleges that she could perform the job of cashier/service-team member with a reasonable accommodation on the part of Chicken Salad Chick.

We use a burden-shifting framework to measure whether the plaintiff has put forward a legally sufficient claim of being denied a reasonable accommodation. *See Rorrer v. City of Stow*, 743 F.3d 1025, 1038–39 (6th Cir. 2014). As an initial matter, nobody denies that Bowles is disabled, that she is otherwise qualified for the position, or that Chicken Salad Chick denied her proposed accommodation. *See Cooper v. Dolgencorp, LLC*, 93 F.4th 360, 368–69 (6th Cir. 2024). So Bowles's initial burden is to show that her proposed accommodation is "objectively reasonable." *See id.* at 371. As part of this effort, Bowles must demonstrate that her proposed accommodation (i.e., being able to "sit for a duration of five minutes after every ten minutes of

standing," Am. Compl. ¶ 8, R. 5, PageID 14) allows her to perform the essential functions of the job sought (i.e., a cashier/service-team member at Chicken Salad Chick). *See Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202 (6th Cir. 2010); *see also EEOC v. Ford Motor Co.*, 782 F.3d 753, 761 (6th Cir. 2015) (en banc) (holding that an accommodation that eliminates an "essential function" of a position is "per se unreasonable" (citation modified)); *Keith v. County of Oakland*, 703 F.3d 918, 927 (6th Cir. 2013) (observing that the employee's "initial burden" also requires that the proposed accommodation be "efficacious" and "proportional to costs" in the "run of cases" concerning the position (citation modified)).

If Bowles meets this threshold criteria, the burden of production shifts to Chicken Salad Chick to show that Bowles's proposed accommodation would specifically cause the company "undue hardship." *King v. Steward Trumbull Mem'l Hosp., Inc.*, 30 F.4th 551, 560 (6th Cir. 2022) (citing *Cleveland v. Fed. Express Corp.*, 83 F. App'x 74, 79 (6th Cir. 2003)); *Walsh v. United Parcel Serv.*, 201 F.3d 718, 726 n.3 (6th Cir. 2000) (quoting *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1183 n.10 (6th Cir. 1996)) (observing that the undue hardship inquiry evaluates the employer's particular situation). And if the company satisfies that obligation, Bowles has the burden of coming forward with evidence to rebut the employer's evidence. *See, e.g.*, *Talley v. Fam. Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1108–09 (6th Cir. 2008); *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1179 (10th Cir. 1999) (en banc). Through all of this, the ultimate burden is on Bowles to persuade that she has been the victim of illegal discrimination. *See White v. York Int'l Corp.*, 45 F.3d 357, 361 (10th Cir. 1995) (citing, *inter alia*, *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)).

Bowles's claim stumbles from the start, as she did not satisfy her initial burden of showing that her proposed accommodation—being able to sit for five minutes after every ten minutes of standing—is objectively reasonable, accounting for the essential requirements of the cashier/service-team member role at Chicken Salad Chick. The record on this front—including the "employer's words, policies, and practices"—is overwhelming and undisputed. *See Ford Motor Co.*, 782 F.3d at 765–66 (discussing the relevant evidence to gauge what amounts to an essential job function).

Start with what the job entailed.  It was a generalist, front-of-house position at a fast causal restaurant.  Those features made multitasking essential.  The role likewise required the team member to shift from one duty (e.g., taking a customer's order) to another (e.g., delivering food from the kitchen to a seated customer or cleaning a mess in the dining room) at a moment's notice.  For instance, Chicken Salad Chick's written job description indicated that the job involved host of tasks, including expediting orders, assisting with dining-room service, restocking drink stations, emptying the trash, cleaning restrooms, and cleaning equipment, in addition to other responsibilities.  *See* 42 U.S.C. § 12111(8) (declaring that an employer's written description for the job "shall be considered evidence of the essential functions of the job").  And the restaurant's broader job description for all team members recognized that employees operate in a "fast-paced" environment where having "well-paced mobility" for the duration of the workday was understood to be critical to operating in the company's workplace.  This array of duties was confirmed by the testimony of a Chicken Salad Chick manager and head of human resources.  Other evidence in the record—from pictures showcasing active cashier/service-team members at the Crestview Hills location  to items reflecting the very limited breaks that Chicken Salad Chick historically afforded the position—further confirm that versatility and mobility were essential functions of the position.

Juxtapose these critical job duties with what Bowles requested: the ability to sit in one location for a duration of five minutes—presumably in front a cash register—after standing for ten.  Bowles's request would necessarily change the nature of the cashier/service-team member position.  For a third of her shift, Bowles's job would be isolated to manning the cash register, regardless of whether there was a customer waiting at the register.  And during those periods, Bowles would be unable to tackle numerous duties, from greeting a customer at the door to rushing an order out to a hungry patron to cleaning up a spill at the drink station, just to name a few, any of which could occur at a moment's notice in the setting of a fast-casual restaurant.  This collection of duties is why Chicken Salad Chick requires both multitasking and mobility from its team members.

Yet limiting Bowles's responsibilities in the way she proposes would transform a jack-of-all-trades position largely into a master of the cash register for significant parts of the shift,

"fundamentally alter[ing]" the position. *Kiphart v. Saturn Corp.*, 251 F.3d 573, 584 (6th Cir. 2001) (quoting 29 C.F.R. § 1630.2(n) app. at 356); *see also Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1177 (10th Cir. 1999) (holding that a requested accommodation that converts a position from one in which the employee is required to "perform multiple tasks" to "one which requires an employee to sit in one place and perform one task" fundamentally changes the nature of the position). The accommodation would also affect Chicken Salad Chick's broader workforce. After all, while Bowles would be tied to the cash register, other team members presumably would need to pick up the slack, further demonstrating the unreasonableness of Bowles's request. *See Kellar v. Yunion, Inc.*, 157 F.4th 855, 878 (6th Cir. 2025) (quoting *Cooper*, 93 F.4th at 372) (holding that a request to reallocate essential functions of a job is not reasonable); *Anderson*, 181 F.3d at 1177 (rejecting the argument that an employer is "legally obligated" to make its other employees perform "all of the operation's demanding tasks while Plaintiff performs only certain light tasks"). On this record, Bowles failed at summary judgment to show that she requested an objectively reasonable accommodation. *See Cooper*, 93 F.4th at 371.

2. Seeing things otherwise, Bowles first disputes our understanding of the position for which she was hired. To her mind, she was hired to run the register, not to be a cashier/service-team member. The problem for Bowles is that there is no evidence that she was hired for a standalone register-only position. In fact, no such position existed at the restaurant. The only position identified in the record is the cashier/service-team member role. And its written job description and the deposition testimony presented at summary judgment show that the role was far more than a limited, register-centric job. True, both Chicken Salad Chick's employees as well as Bowles referred to the position colloquially as the "cashier" role. But the position's name, either formal or informal, is far less meaningful than its critical functions. As we engage in the "highly fact specific" inquiry into what is an essential function, *Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 605 (6th Cir. 2018) (quoting *Hoskins v. Oakland Cnty. Sheriff's Dep't*, 227 F.3d 719, 726 (6th Cir. 2000)), a job title alone tells us very little, *see Stone v. City of Mount Vernon*, 118 F.3d 92, 99 (2d Cir. 1997) ("[P]roper analysis of a claim under the federal disability statutes, must be focused on the fundamental job duties of the employment position . . . rather than solely on the title held . . . ." (citation modified)). And in

light of undisputed evidence that the essential job duties of the position Bowles sought entailed far more than solely or even primarily manning a cash register, we reject the invitation to assess that role in the narrow light posed by Bowles.

Turning to the functions of the cashier/service team manager job Bowles was in fact hired to fill, she maintains that her requested accommodation was reasonable. But that raises the question: What accommodation does Bowles believe she in fact requested? During her job interview, Bowles disclosed that she was not sure she could "stand the whole time" while on the job. On that basis, Bowles maintains that a reasonable jury could conclude that an accommodation that permitted her to sit "intermittingly" would have allowed her to still perform the job's essential functions. But a bare request simply to sit whenever needed is so nebulous that it amounts to no accommodation request at all. *See Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 635 (6th Cir. 1998); *see also Gantt v. Wilson Sporting Goods Co*., 143 F.3d 1042, 1046–47 (6th Cir. 1998) ("The employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation."); *cf. Luna v. Walgreen Co.*, 347 F. App'x 469, 472 & n.2 (11th Cir. 2009) (per curiam) (rejecting as a reasonable accommodation a request that an employee "needed to sit at work" that failed to indicate "how long" or "for what intervals" because it provided insufficient notice to her employer).

Nor does the record reflect, as Bowles seems to suggest, that she confined her request to sit only while manning the register, meaning she could commit to standing at a moment's notice to fulfill the job's requirements of being able to multitask and freely move. Rather, Bowles's complaint focuses on her request that she be able to sit for the "duration of five minutes after every ten minutes of standing." Am. Compl. ¶ 8, R. 5, PageID 14. And in her reply brief, Bowles confirms that her accommodation request was to "sit for five minutes after ten minutes of standing," meaning that simply sitting as needed or when at the register would not have accommodated Bowles's specific needs. Reply Br. at 1, 6. Against this backdrop, our focus appropriately is on the request in Bowles's complaint. *See Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 813 (6th Cir. 2020) ("[E]mployees cannot justify accommodations for the first time during litigation, let alone on appeal." (citing *Melange v. City of Center Line*, 482 F. App'x 81, 86 (6th Cir. 2012)); *see also Stover v. Amazon.com, LLC*, No. 21-5421, 2022 WL 94608, at

*4 (6th Cir. Jan. 10, 2022) (requiring the "specific accommodation" defended at summary judgment be "identical to the one referenced in [the] complaint" (quoting *Manigan v. Sw. Ohio Reg'l Transit Auth.*, 385 F. App'x 472, 478 n.5 (6th Cir. 2010)).

With that understanding in mind, it bears repeating that requiring a duration of five minutes of sitting after standing for ten is what makes Bowles's request facially unreasonable. Meeting those terms would alter essential functions of the cashier/service-team member position while foisting added duties on co-workers when Bowles manned the cash register. Perhaps, as Bowles emphasizes, she could perform some tasks during her time standing. But that misses the point. The nature of the job—working in the front of the house at a fast-casual restaurant—necessarily means that a given task could crop up at any time. In one minute, the kitchen might have prepared a food order to run out to a customer. The next, a customer might finish her meal, leaving a messy table behind. And a minute later, the beverage station or refrigerator may need restocking. Had Chicken Salad Chick granted Bowles's accommodation, all of those tasks would go unattended by Bowles while she sat at the cash register, despite her position's essential requirements and the restaurant's needs.

Neither *Talley v. Family Dollar Stores of Ohio*, 542 F.3d 1099 (6th Cir. 2008), nor *Gleed v. AT&T Mobility Services, LLC*, 613 F. App'x 535 (6th Cir. 2015), controls the outcome here, as both cases involved positions where mobility was not an essential feature, making the requested accommodation reasonable under the circumstances. In *Talley*, the plaintiff proposed being able to use a stool during the part of her job when she worked the register at a retail shop. *See* 542 F.3d at 1108 (noting that plaintiff could adequately perform her job at the cash register with the use of a stool). Similarly, in *Gleed*, the plaintiff sought to use a chair during sales shifts at a mobile phone store. 613 F. App'x at 537–38 (noting that plaintiff's job previously allowed him to "sit most of the day" and that "prolonged standing" was not an "essential part" of the job). Here, on the other hand, the record reflects that the cashier/service-team member position was not a stationary, sales-only role but instead required the ability to multitask and move. That necessarily made Bowles's request to rest for a third of her shift facially unreasonable.

Lastly, Bowles highlights refrains in our ADA precedent suggesting that what is an essential job function and what is a reasonable accommodation are fact bound inquiries

"generally" left for the jury. *See, e.g.*, *Blanchet v. Charter Commc'ns, LLC*, 27 F.4th 1221, 1229–30 (6th Cir. 2022) (citing *Cassidy*, 138 F.3d at 634); *Keith*, 703 F.3d at 927 (citing *Haschmann v. Time Warner Ent. Co.*, 151 F.3d 591, 601 (7th Cir. 1998)). While there undoubtedly are cases where disputes of fact arise over what a job entails and whether an accommodation would interfere with core functions of that job, in the end, disputes over both issues involve a mixed question of law and fact. *See Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 743 (10th Cir. 2013) (citing *McKenzie v. Dovala*, 242 F.3d 967, 975–76 (10th Cir. 2001)). And it is appropriate for us to resolve these mixed questions at summary judgment when there are few evidentiary disputes over the material facts. *See Payne v. Novartis Pharms. Corp.*, 767 F.3d 526, 530 (6th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). That is the case here. There is no evidentiary dispute as to the essential functions of the cashier/service-team member position. Nor is there a dispute over the nature of Bowles's proposed accommodation. As a result, we follow the well-trodden path of determining as a matter of law whether Bowles's proposed accommodation is a facially reasonable one. *See, e.g*, *Cooper*, 93 F.4th at 373; *Ford Motor Co*, 782 F.3d at 762; *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 394 (6th Cir. 2017). And, again, we hold that it is not.

B.

Next is Bowles's interactive process claim. It deserves less attention. Under the ADA's implementing regulations, the "employee and employer must engage in 'an informal, interactive process' to negotiate an accommodation that allows the disabled employee to work despite [her] limitations." *Tchankpa,* 951 F.3d at 812 (quoting *Banks v. Bosch Rexroth Corp.*, 610 F. App'x 519, 528 (6th Cir. 2015)). That said, a "failure to engage in the interactive process is only an independent violation of the ADA if the plaintiff establishes a prima facie showing that [s]he proposed a reasonable accommodation." *Rorrer*, 743 F.3d at 1041 (citing *Keith*, 703 F.3d at 929; *Breitfelder v. Leis*, 151 F. App'x 379, 386 (6th Cir. 2005)); *Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 525 (6th Cir. 2021) ("[F]ailure to engage in the interactive process does not give rise to an independent claim[;] . . . it is a violation of the ADA only if plaintiff establishes a prima facie case of failure to accommodate" (citation omitted)); *Ford Motor Co.*, 782 F.3d at 766 (similar). Understandably, Bowles may be frustrated at the speed at which Chicken Salad Chick

resolved her accommodation inquiry (specifically, taking a month from her supposed start date to rescind the job offer), and the company's refusal to provide a "counter accommodation" in their final conversation. *But see Jakubowski*, 627 F.3d at 203 (citing *Talley*, 542 F.3d at 1108, 1100) (holding employers are not required to propose a counter accommodation during the interactive process). But a viable interactive-process claim presupposes the existence of a reasonable accommodation. And with Bowles having presented a facially unreasonable request to Chicken Salad Chick, her remaining claim necessarily fails.

\*     \*     \*     \*     \*

We affirm the judgment of the district court.