RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 08a0344p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

PEARLIE TALLEY,

> *Plaintiff-Appellant,*

v.

No. 07-3971

FAMILY DOLLAR STORES OF OHIO, INC.; JOHN
PARKER; VINCENT COWLES; and RIC SPRING,

> *Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 05-02421—John R. Adams, District Judge.

Argued: June 5, 2008

Decided and Filed: September 11, 2008

Before: MERRITT, MOORE, and ROGERS, Circuit Judges.

---

## COUNSEL

**ARGUED:** Michael J. Wright, EDWARD L. GILBERT CO., Akron, Ohio, for Appellant. Thomas Michael Metzger, LITTLER MENDELSON, Columbus, Ohio, for Appellees. **ON BRIEF:** Michael J. Wright, Edward L. Gilbert, EDWARD L. GILBERT CO., Akron, Ohio, for Appellant. Thomas Michael Metzger, Margaret C. Bettendorf, LITTLER MENDELSON, Columbus, Ohio, for Appellees.

---

## OPINION

---

MERRITT, Circuit Judge. The plaintiff, Pearlie Talley, appeals the district court's grant of summary judgment in favor of the defendants, Family Dollar Stores of Ohio (Family Dollar), John Parker, Vincent Cowles, and Ric Spring, on her claims of discrimination in violation of the Americans with Disabilities Act (ADA) and Ohio's anti-discrimination statute and her claim for intentional infliction of emotional distress. For the reasons set forth below, and because we conclude that there is a material dispute of fact about whether Talley abandoned her job or was discharged, we **AFFIRM** in part, **REVERSE** in part, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

Talley began working for Family Dollar as a cashier on January 17, 1996. Her position involved operating the cash register, cleaning the store, and stocking shelves. During her eight years with Family Dollar, Talley worked at several of the store's locations and had several managers. Three of the managers are the individual defendants in the plaintiff's suit based on violations of Ohio's anti-discrimination law. John Parker worked for Family Dollar as a store manager before being promoted to assistant district manager in 1999 and district manager in 2001. He resigned from his position on approximately September 4, 2004, prior to Talley's last day of employment. Vincent Cowles became the store manager at the location where Talley worked in late May 2001. Cowles supervised Talley at one other location, but did not have any supervisory role over her after May 2004. Ric Spring became the store manager at the Hawkins store where Talley was assigned to work in August 2004. He remained her supervisor until the last day of her employment.

Several times during the course of her employment, Talley took medical leave from her job due to health issues. Throughout her time with Family Dollar, Talley suffered from degenerative osteoarthritis of her cervical and lumbar spine. Talley alleges that the disease creates such pain in her legs and back that she is unable to stand or sit for long periods of time. In October 2001, the plaintiff tore the cruciate ligament in her knee which forced her to take medical leave for several months. In April 2003, Talley had a heart attack and underwent quadruple bypass surgery, which necessitated another five months of leave from work. On March 25, 2004, she slipped on recently waxed floors while at work. After her fall, Talley continued to work but as her pain increased she could not stand for more than fifteen minutes without experiencing severe pain. Talley contends that while some of her supervisors allowed her to bring a stool to work to use at her cashier station, others forbade this practice. She alleges that in March 2004, Cowles objected to her use of the stool because other employees had complained that Talley was receiving unfair treatment. Without the use of a stool to sit upon while working the register, she was unable to perform her position and, as a result, she took medical leave in May 2004.

In July 2004, Talley informed Parker that she had received medical clearance and could return to work as of August 9, 2004. According to Talley, Parker insisted that she provide a doctor's note that did not place any restrictions or limitations on her ability to work. She provided a note to Parker that gave her permission to return to work with no restrictions. That note is part of the record. J.A. at 584. Talley alleges that prior to returning to work she gave Spring, her direct supervisor, a different return-to-work notice that required that Talley be permitted to use her stool.[1] Talley alleges that prior to her returning to work on September 9, 2004, Spring asked her to sign a letter that stated that she understood that she would not be permitted to use a stool at work and that she would be limited to three five minute breaks during a six-hour shift. Instead of signing the letter, Talley wrote a letter explaining that she could not sign the letter because it would prohibit her use of a stool. She agreed to obtain a doctor's note that would state that she could perform her duties as required if she had a stool to sit upon. She promised to provide this statement on Friday, September 10, 2004.[2]

---

[1] There is no evidence of this note in the record.

[2] We agree with the district court that Talley's promise to provide a doctor's note mandating the use of a stool on September 10 calls into question her assertion that she had previously provided such a note.

On September 9, 2004, the plaintiff returned to work and did not use a stool during her shift. Within two hours of beginning her shift on September 10, however, she complained of severe pain and inquired whether she could have her sister deliver the stool to the store. Spring refused and allegedly gave Talley two options; either she could finish her shift without a stool or she could get a doctor's note that indicated that she needed a stool to perform her job. Talley chose the latter option and secured a note from her doctor that same day which provided:

> The above named patient is under my medical care. It is my opinion that he/she will
>     be able to return to work with the following restrictions:
>             (1)  Patient is to stand no longer than 60 minutes at a time.
>             (2) This is to be followed by 5 -15 minutes of sitting (a stool would
>             be beneficial).

J.A. at 315. She returned to work with the note and gave it to Spring who allegedly refused to open the note. He indicated that he would schedule a meeting among himself, Talley, and the district manager to resolve the issue. Talley then left the store, without finishing her shift, and never returned.

After September 10, 2004, Talley alleges that she attempted to call Spring several times to arrange the meeting but that the meeting never took place. In February 2005, Family Dollar discharged the plaintiff citing job abandonment as the reason.

On September 21, 2005, the plaintiff filed a complaint in the Summit County Court of Common Pleas seeking damages relating to her termination. On October 14, 2005, the defendants removed the case to federal court. The plaintiff filed a second amended complaint on July 24, 2006, alleging that Family Dollar had violated the ADA, and that Defendants Family Dollar, Parker, Cowles, and Spring were liable for violations of Ohio's anti-discrimination statute. The plaintiff also brought a claim for intentional infliction of emotional distress. On March 5, 2007, the defendants moved for summary judgment on all claims.

The district court granted the defendants' motion on June 25, 2007. With regard to the plaintiff's ADA and state law discrimination claims, the court found that the plaintiff had failed to make a prima facie case of discrimination under either the ADA or Ohio law because it found that the plaintiff had not shown that she was either expressly terminated or constructively discharged from her employment. Specifically, the court reasoned that the plaintiff's failure to return to work after September 10, 2004, was not the result of the employer's intentional effort to terminate her employment, but instead was due to the plaintiff's failure to comply with the management's request for a doctor's note and Talley's departure from the store without resolving the issue. Because the plaintiff failed to show evidence of an adverse employment action, the plaintiff's ADA and state law claims were dismissed. Additionally, the court granted summary judgment on the plaintiff's intentional infliction of emotional distress claim because it found that she had not demonstrated that the defendants engaged in outrageous or extreme behavior or that she suffered severe emotional distress. This appeal followed.

## II. ANALYSIS

### A. Plaintiff's ADA & Ohio-Disability Discrimination Claims

The ADA[3] provides, in relevant part, that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Where, as here, the plaintiff seeks to establish discrimination through indirect, rather than direct, evidence, we require the plaintiff to establish a prima facie case, followed by the familiar *McDonnell Douglas* burden-shifting. Once a plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its actions. *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If the defendant can satisfy its burden, the plaintiff must show by a preponderance of the evidence that the proffered explanation is a pretext for discrimination. *Id.* To establish a prima facie case of discrimination under the ADA, a plaintiff must show "(1) that she or he is an individual with a disability, (2) who was otherwise qualified to perform a job's requirements, with or without reasonable accommodation; and (3) who was discriminated against solely because of the disability. *Mahon v. Crowell*, 295 F.3d 585, 589 (6th Cir. 2002). The third element requires that the plaintiff suffer an adverse employment action. *Plautz v. Potter*, No. 04-6105, 2005 U.S. App. LEXIS 28501, at **13 (6th Cir. Dec. 21, 2005). We agree with the district court's finding that the plaintiff's implicit claim is that she was constructively discharged from her job because of her disability. But this case is more complicated than the traditional constructive discharge case because the plaintiff alleges that the defendants' failure to accommodate her disability was the impetus for her involuntary resignation. Thus, the central issue is whether the defendants' alleged refusal to provide Talley with a reasonable accommodation converted her resignation into a constructive discharge.

Before we decide whether the defendants' actions constituted an adverse employment action, we must first address the threshold issue of whether Talley is disabled, as defined by the ADA. "An individual is considered 'disabled' under the ADA if she (1) 'has a physical or mental impairment that substantially limits one or more of the major life activities of such individual,' (2) 'has a record of such impairment,' or (3) is regarded by her employer as having such an impairment." *Gruener v. Ohio Casualty Ins. Co.*, 510 F.3d 661, 664 (6th Cir. 2008) (quoting *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 810 (6th Cir. 1999)); *see also* 42 U.S.C. § 12102(2). The plaintiff argues that she is both actually disabled and that she was regarded-as-disabled by her employer. With respect to the regarded-as claim, the defendants argue that the plaintiff first raised this claim in her memorandum in opposition to summary judgment and that we should disregard this claim as untimely. For the purposes of this appeal, we will assume without deciding that because the statute defining disability includes 'regarded-as-disabled' discrimination, the original complaint may have implicitly encompassed a regarded-as claim. *See Beery v. Assoc. Hygienic Prods., LLC.*, No. 06-3687, 2007 U.S. App. LEXIS 19089, at **8 (6th Cir. Aug. 8, 2007). The ADA's regarded-as-disabled provision is designed to "stamp out the stereotyping of and discrimination against persons

---

[3]Under Ohio law, to make a prima facie case of disability discrimination, a plaintiff must show "(1) that he or she was handicapped, (2) that an adverse employment action was taken by an employer, at least in part, because the individual was handicapped, and (3) that the person, though handicapped, can safely and substantially perform the essential functions of the job in question." *Hood v. Diamond Prods, Inc.*, 658 N.E.2d 738, 739 (Ohio 1996). The Ohio Supreme Court has found that because the "federal Americans with Disabilities Act (ADA) is similar to the Ohio handicap discrimination law. . . .[w]e can look to regulations and cases interpreting the federal Act for guidance in our interpretation of Ohio law." *City of Columbus Civ. Serv. Comm'n v. McGlone*, 697 N.E.2d 204, 206 (Ohio 1998). Consequently, we consider the ADA and state law claims simultaneously by looking to the cases and regulations that interpret the ADA.

with disabilities in all their forms." *Ross v. Campbell Soup Co.*, 237 F.3d 701, 706 (6th Cir. 2001). "[A]n individual may fall into the definition of one regarded as having a disability if an employer ascribes to that individual an inability to perform the functions of a job because of a medical condition when, in fact, the individual is perfectly able to meet the job's duties." *Id.* The Supreme Court has provided further guidance for courts when analyzing the regarded-as prong of the ADA:

> There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual – it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.

*Sutton v. United Air Lines*, 527 U.S. 471, 489 (1999). The plaintiff asserts that she met the regarded-as prong because she was regarded as disabled by her supervisors and co-workers, many of whom testified that they recognized her obvious discomfort when she was working at her register. That the defendants and other co-workers recognized that Talley had severe health problems and physical impairments does not satisfy the regarded-as prong. Rather, Talley would either have to show (1) that the defendants mistakenly believed that she had a limiting impairment when in fact she did not (an argument she does not make)[4] or (2) that the defendants believed she had a limiting impairment when that impairment, in fact, was not so limiting (she does not argue that the defendants believed she was incapable of working the register due to her impairment). There is no indication in the record that Family Dollar ascribed to Talley an inability to perform the functions of her job; instead, the company clearly believed that she could continue to work the register if she was given the proper accommodation. Therefore, the plaintiff failed to show that she was 'regarded-as-disabled.'

We agree with the district court that the plaintiff created a genuine issue of material fact regarding the plaintiff's claim that she is actually disabled because she has a "physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2). The district court found that the plaintiff created a genuine issue of material fact with regard to this element because she had produced an expert report from her doctor that concluded that she was disabled.[5] The plaintiff alleges that she is substantially limited in her ability to sit, walk, stand, climb, breathe, work, and care for herself. The Equal Employment Opportunity Commission has issued regulations that provide some guidance regarding the terms "substantially limits" and "major life activities." The regulations explain that "major life activities" include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). An impairment will be found to substantially limit a major life activity if the individual is "[u]nable to perform a major life activity that the average person in the general population can perform" or if the individual is "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1).

---

[4] Nowhere in the complaint or briefs does the plaintiff allege that the defendants mistakenly believed she was physically impaired.

[5] The defendants argue that a plaintiff cannot create an issue of fact regarding whether one is disabled simply by submitting a doctor's report that states that the plaintiff is disabled. But the record contains more than a single report. It is replete with deposition testimony and doctors' letters and evaluations that lay out the severity of Talley's health problems and the possible impact these issues had on her ability to perform her job.

Talley has raised a genuine issue of material fact regarding whether her physical impairment substantially limits various major life activities including walking, standing, and lifting. She does not allege that she is disabled from working: rather, Talley's claim is that she is substantially limited in her ability to walk, stand, and lift objects and that the defendants failed to accommodate her needs following her various injuries. According to her testimony, the manner and duration under which she can perform these activities is significantly restricted due to severe pain. Talley testified at length regarding her various injuries and their impact on her ability to walk, stand, and lift as compared to an average person in the general population. She also produced deposition testimony from co-workers who claimed that Talley often appeared to be in severe pain when she was working at her register. Further, at least one expert has concluded that she is disabled due to her injuries. A reasonable jury, based upon the evidence, could find for the plaintiff and conclude that she is disabled.

In order to make a prima facie claim of discrimination, the plaintiff must also show that she suffered an adverse employment action due to her disability. An adverse employment action is a "materially adverse change in the terms or conditions of . . . employment because of [the] employer's conduct." *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004) (quoting *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996)). The plaintiff alleges that she suffered an adverse employment action when she was constructively discharged from her employment, which occurred when she was no longer put on the schedule and she was refused a reasonable accommodation. A constructive discharge claim "depends upon the facts of each case and requires an inquiry into the intent of the employer and the reasonably foreseeable impact of the employer's conduct upon the employee." *Smith v. Henderson*, 376 F.3d 529, 533 (6th Cir. 2004). It requires a finding that "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Held v. Gulf Oil Co.*, 684 F.2d 427, 432 (6th Cir. 1982) (quoting *Bourque v. Powell Elec. Mfg.*, 617 F.2d 61, 65 (5th Cir. 1980)). Talley's claim of constructive discharge is premised upon a finding that her working conditions were made intolerable, and it was foreseeable she would resign when she was denied a reasonable accommodation.

The ADA prohibits discriminating "against a qualified individual with a disability,"[6] 42 U.S.C. § 12112(a) (2008), and defines discrimination to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability," *id.* § 12112(b)(5)(A). The Act defines "reasonable accommodation" to include:

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices . . . [or] other similar accommodations for individuals with disabilities.

*Id.* § 12111(9). An ADA plaintiff "bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 870 (6th Cir. 2007) (quoting *Hedrick v. W. Reserve Care Sys. & Forum Health*, 355 F.3d 444, 457 (6th Cir. 2004)). "An employer, then, has the burden of persuasion to show that an accommodation would impose an undue hardship." *Hedrick*, 355 F.3d at 457. Importantly, an employee cannot force her employer to provide a specific accommodation if the employer offers

---

[6] A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

another reasonable accommodation. *Id.* If an employee rejects a reasonable accommodation, the individual is no longer considered a "qualified individual with a disability." *Id.*

Viewing the facts in the light most favorable to the plaintiff, she proposed the use of a stool (an accommodation that her supervisors had let her use on prior occasions), but she was told that this was no longer acceptable, allegedly because other employees had complained about unfair treatment. The parties dispute whether Talley was offered the chance to take breaks in lieu of using a stool and whether those breaks would have been sufficient to allow her to work her shift without pain. The record suggests that the use of a stool may have been a reasonable accommodation, especially since her prior supervisors allegedly were not concerned about Talley's productivity when she was allowed to use the stool. There is testimony that Talley was able to adequately perform her job at the register with the use of a stool and that she did not require unlimited breaks when she was allowed to use the stool. While it is true that the plaintiff cannot reject a reasonable accommodation, according to Talley, she was not offered an accommodation that would have allowed her to work her shift without pain. Therefore, we conclude that there is a genuine issue of material fact regarding whether the plaintiff proposed a reasonable accommodation that would have allowed her to be "otherwise qualified" for the cashier position despite her disability. Further, if a jury were to find that Talley's requests, both written and oral, for a stool constituted a request for a reasonable accommodation, there is a remaining dispute of whether that accommodation would cause an undue hardship for the employer. The defendants have not set forth specific facts indisputably demonstrating that the use of a stool would have presented an undue hardship for the company. While the defendants allege that other co-workers had complained about unfair treatment, given Talley's and other workers' testimony that she was able to perform her job adequately when using the stool, there is a genuine issue of material fact as to whether this accommodation would have imposed an "undue hardship" on Family Dollar and the other defendants.

Assuming that Talley was denied a reasonable accommodation that forced her to work in excess of her medical restrictions, a reasonable jury could infer that the defendants knew that Talley's working conditions would become intolerable to a reasonable person suffering from her particular disability. The plaintiff has presented sufficient evidence from which a jury could find that her failure to return to work and eventual discharge was a foreseeable and intended result of the company's action in refusing to allow her to use a stool and refusing to hold a meeting to resolve the issue. The district court found that "[m]anagement was evidently willing to allow her to use the stool if she provided a note from her doctor requiring it." *Talley v. Family Dollar of Ohio, Inc.*, No. 5:05CV2421, 2007 WL 1831116, at *6 (N.D. Ohio June 25, 2007). But according to Talley's testimony, when she handed Spring a doctor's note on September 10, he refused to read it and indicated that the note was not necessary and that the issue would be resolved through a meeting. While it is true that the note in question only specified that a stool would be "beneficial" as opposed to "necessary," since the content of the note was allegedly irrelevant to Spring, Talley could have reasonably believed that she would not be allowed to work with a stool regardless of what any note said. The record shows that Talley approached her supervisors on numerous occasions during her employment to discuss her disability and possible accommodations. When Talley was told on September 10, 2004, that she would not be allowed to use a stool, she may reasonably have believed that she would either have to work her entire shift without a stool – conditions she alleges were intolerable due to severe pain – or resign. The district court focused on the fact that Talley was not formally discharged until February 2005 and it concluded that Family Dollar was still uncertain about Talley's intentions in September 2004 and had no intention of discharging her at that time. We find that the plaintiff has produced sufficient evidence that may lead a jury to conclude that the defendants intended for Talley to resign and that it was foreseeable that she would when they (1) denied her use of the stool after years of being able to use it, (2) refused to read a doctor's note that she delivered upon their request, (3) failed to organize a meeting to discuss the issue, and (4) failed to contact her regarding the status of the meeting or with other alternatives to resolve the issue. Consequently, there is a genuine issue of material fact regarding whether her working

conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.

As our sister circuit recognized in *Johnson v. Shalala*, "a complete failure to accommodate, in the face of repeated requests, might suffice as evidence to show the deliberateness necessary for constructive discharge." 991 F.2d 126, 132 (4th Cir. 1993). We emphasize that our holding today does not pave the way for an employee to assert a claim for constructive discharge every time an employer fails to accommodate her disability. But when an employee makes a repeated request for an accommodation and that request is both denied and no other reasonable alternative is offered, a jury may conclude that the employee's resignation was both intended and foreseeable.

Additionally, we note that the ADA's regulations indicate that, "[t]o determine the appropriate reasonable accommodation [for a given employee,] it may be necessary for the [employer] to initiate an informal, interactive process with the [employee]." 29 C.F.R. § 1630.2(o)(3). "The interactive process requires communication and good-faith exploration of possible accommodations." *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1114 (9th Cir. 2000) (en banc), *vacated on other grounds by U.S. Airways v. Barnett*, 535 U.S. 391 (2002). We have found that the "interactive process is mandatory and both parties have a duty to participate in good faith." *Kleiber*, 485 F.3d at 871. "When a party obstructs the process or otherwise fails to participate in good faith, 'courts should attempt to isolate the cause of the breakdown and then assign responsibility.'" *Id.* (quoting *Beck. v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996)).

Talley argues that the defendants failed to engage in this process by not setting up a meeting as promised to discuss possible resolutions to the issue. While the parties had long been seeking to resolve whether Talley could use the stool, the record shows that the process ultimately broke down in September 2004 when Talley alleges that the defendants made it clear to her that the next step in the process would be a meeting. A reasonable jury could find that Talley believed that her supervisor would set up a meeting where the parties could come to a resolution and that until that time, she should not return to work since she would be unable to complete a shift without the use of a stool. According to the plaintiff, she called several times to set up this meeting and her calls were not returned and a meeting was never arranged. At this meeting, the parties might have further discussed and resolved what accommodations could allow Talley to return to work without presenting an undue hardship for the company. There is a genuine issue of material fact regarding who was responsible for the breakdown in the interactive process.

For the foregoing reasons, we reverse the district court's grant of summary judgment in favor of the defendants on the plaintiff's claims alleging violations of the ADA and Ohio's anti-discrimination statute.

### B. Plaintiff's Intentional Infliction of Emotional Distress Claim

Talley also alleges that the district court erred in granting the defendants' motion for summary judgment on Talley's intentional infliction of emotional distress claim. This claim fails as a matter of law and we affirm this portion of the district court's judgment. In Ohio, a plaintiff claiming intentional infliction of emotional distress must show that "(1) the defendant intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to the plaintiff; (2) defendant's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) defendant's conduct was the proximate cause of plaintiff's psychic injury; and (4) plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it." *Ekunsumi v. Cincinnati Restoration, Inc.*, 698 N.E.2d 503, 506 (Ohio Ct. App 1997); *see also Yeager v. Local Union 20*, 453 N.E.2d 666 (Ohio 1983).

Even when viewing the facts in the light most favorable to Talley, the plaintiff fails to raise a genuine issue of material fact regarding outrageous conduct or serious emotional distress sufficient to survive summary judgment. Talley argues that Family Dollar's conduct was extreme and outrageous because its employees allegedly lied to her about meetings concerning her need for a stool, delayed calling her back to work, threatened her with loss of benefits, and contacted other Family Dollar stores to prevent her from using a stool at other stores. (Appellant's Br. 28-29). Even assuming this conduct occurred, it does not constitute the sort of extremely atrocious and outrageous behavior that is "utterly intolerable in a civilized community." *See Ekunsumi*, 698 N.E.2d at 506. Additionally, this Court has previously held that "an employee's termination, even if based upon discrimination, does not rise to the level of 'extreme and outrageous conduct' without proof of something more." *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999) (applying Ohio law). The essence of Talley's intentional infliction of emotional distress claim is that the circumstances surrounding her termination caused her to suffer serious emotional distress. But she does not allege "something more" than those circumstances, so her claim fails to meet this requirement.

Moreover, Talley's claim also fails because she has not provided evidence that her emotional distress "was serious and of such a nature that no reasonable person could be expected to endure it." *Ekunsumi*, 698 N.E.2d at 506. Talley provides no evidence of seeking expert psychological assistance for her condition. Rather, the sum of her evidence was her assertion that she finds it difficult to get out of bed each day and her sister's affidavit stating that Talley "cries frequently and otherwise appears to be depressed." *Talley v. Family Dollar of Ohio, Inc.*, No. 5:05CV2421, 2007 WL 1831116 at *7 (N.D. Ohio June 25, 2007). While Ohio does not require expert medical testimony to support an intentional infliction of emotional distress claim, a plaintiff must at least provide some evidence beyond his or her own testimony. *Buckman-Peirson v. Brannon*, 822 N.E.2d 830, 841 (Ohio Ct. App. 2004). Simply stated, Talley's own assertion and her sister's affidavit do not provide evidence of serious emotional distress.

For the foregoing reasons, the judgment of the district court granting summary judgment to the defendants is AFFIRMED in part, and REVERSED in part.