NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0289n.06

No. 15-5645

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 01, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| BARBARA PERRY, | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE MIDDLE |
| | ) | DISTRICT OF TENNESSEE |
| AMERICAN RED CROSS BLOOD | ) | |
| SERVICES, TENNESSEE VALLEY | ) | |
| REGION, | ) | **OPINION** |
| | ) | |
| **Defendant-Appellee.** | ) | |
| | ) | |

Before: DAUGHTREY, MOORE, and SUTTON, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Plaintiff-Appellant Barbara Perry was an employee of Defendant-Appellee the American Red Cross Blood Services, Tennessee Valley Region ("Red Cross"). Perry was fired pursuant to the Red Cross's absenteeism policy after she accrued seven unscheduled absences in a twelve-month period. Perry contends that she was terminated on the basis of her disabilities, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2612. She also argues that the Red Cross failed to accommodate her disabilities during her employment, in violation of the ADA. The district court granted summary judgment in favor of the Red Cross on all of Perry's claims. For the reasons discussed below, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

Perry worked as an Apheresis Specialist at the Red Cross.  R. 42 (Pl. Resp. to Def. Statement of Undisputed Facts at 1) (Page ID #623).  During her employment at the Red Cross, Perry suffered from several illnesses and injuries; she also requested, and was approved for, periods of FMLA leave.

### A.  FMLA Leave for 2010 Outpatient Foot Surgery

On September 10, 2010, Perry had outpatient surgery on her right foot.  R. 36-12 (Ex. 12 8/23/2010 Nuss Certificate at 2) (Page ID #377).  Perry was approved for continuous-FMLA leave for this foot surgery on August 23, 2010.  R. 36-14 (Ex. 14 FMLA Designation Notice) (Page ID #383).[1]  Perry's surgeon, Dr. H. H. Nuss, released Perry to return to work "with restrictions" on December 31, 2010.  R. 36-13 (Ex. 13 12/29/10 Nuss Letter) (Page ID #381).

At the time of Perry's foot surgery, employee requests for leave at the Red Cross were processed by Patty Holmes, the Human Resources Manager.  R. 42 (Pl. Resp. to Def. Statement of Undisputed Facts at 3) (Page ID #625).  Holmes emailed Perry's supervisors about Perry's restrictions upon returning to work, including that Perry would be "unable to stand 12 [hours] straight," that she should be "allow[ed] 30 min[ute] intervals on and off her feet," and that she "needs to be allowed to wear shoe gear that can accommodate her foot."  R. 36-13 (Ex. 13 12/29/10 Nuss Letter) (Page ID #381); R. 36-16 (Ex. 16 12/29/10 Holmes Email at 1–2) (Page ID #388–89).  John Yakoumis—the Apheresis Manager—told Holmes the Red Cross could

---

[1]Under the FMLA, an employee may take continuous or "intermittent[]" leave when medically necessary. 29 U.S.C. § 2612(b)(1).  While "continuous" leave is taken in one block of time, "[i]ntermittent leave is FMLA leave taken in separate blocks of time due to a single qualifying reason."  29 C.F.R. § 825.202.

accommodate Perry's restrictions, although Perry would need to wear covered shoes because she worked around blood products. R. 36-16 (Ex. 16 12/29/10 Holmes Email at 1) (Page ID #388); *see* R. 45-6 (Ex. 5 Holmes Dep. at 26–27) (Page ID #1246). Perry's restrictions were updated on February 4, 2011 to indicate that Perry needed "to avoid walking on concrete as much as possible," which Yakoumis also indicated that he could accommodate. R. 36-17 (Ex. 17 02/04/11 Yakoumis Email) (Page ID #391). All of Perry's foot-surgery restrictions ended on May 1, 2011. R. 36-18 (Ex. 18 3/18/11 Nuss Letter) (Page ID #393).

**B. Change in Red Cross Leave-Request Policy**

On April 1, 2012, the American Red Cross outsourced its leave-request processing—previously handled by Holmes—to Aon Hewitt, a third-party administrator operating under the name "American Red Cross Benefits Service Center." R. 42 (Pl. Resp. to Def. Statement of Undisputed Facts at 3) (Page ID #625). The Red Cross notified employees of this change by email and flyers. *Id.* at 4 (Page ID #626); *see also* R. 36-4 (Ex. 4 Transition Email) (Page ID #332); R. 36-5 (Ex. 5 Transition Flyer) (Page ID #334). These informational flyers notified employees that beginning on April 2, 2012, Aon Hewitt would administer FMLA absences, personal leave, and non-FML medical leave, in addition to other absences. R. 36-5 (Ex. 5 Transition Flyer) (Page ID #334). Employees were informed that "[t]o initiate a leave request," they should first "[r]eport any immediate or upcoming absences from work to your manager/supervisor using your department's attendance procedure," and then employees should "[c]all [Aon Hewitt] at any time to request leave." *Id.* Employees should then return any

"documentation within the required time frame." *Id.*; *see also* R. 45-6 (Ex. 5 Holmes Dep. at 53–54) (Page ID #1252–53) ("[Employees] are supposed to report [FMLA leave] to Aon Hewitt, and they're supposed to follow the normal procedures for the local office as well."); R. 45-7 (Ex. 6 Yakoumis Dep. at 37) (Page ID #1285). Perry does not dispute that she received this information. R. 42 (Pl. Resp. to Def. Statement of Undisputed Facts at 4) (Page ID #626).

## C. FMLA Leave for Essential Tremor

In April 2012, after Aon Hewitt assumed responsibility for leave requests, Perry submitted a request to Aon Hewitt for intermittent leave under the FMLA. R. 36-24 (Ex. 24 Claim #6513 Acknowledgement Letter) (Page ID #408); R. 36-25 (Ex. 25 Cruz Letter at 2) (Page ID #412). In support of her request, Perry submitted a letter from Dr. Helion Cruz, who certified that Perry "has an essential tremor, which can affect upper extremities, head, and voice. Sometimes it can affect the ability to perform fine motor movements, which are certainly necessary as a phlebotomist." R. 36-25 (Ex. 25 Cruz Letter at 2) (Page ID #412). The certification provided that Perry's condition was "chronic" and that she would need to have treatment visits "twice a year" and that "[w]hen tremulous, [Perry] may have difficulty performing tasks that require fine motor control." *Id.* at 2–3 (Page ID #412–13). Cruz estimated the frequency of Perry's flare ups to be one time per month, lasting approximately one day per episode. *Id.* at 3 (Page ID #413). According to Perry, her tremor could interfere with her ability to use the small "handheld computers" at work, "[b]ut for the majority of the part, [her] tremor, it

did not affect [her] sticking" patients with needles. R. 45-2 (Ex. 1 Perry Dep. Part Two at 99) (Page ID #1048).

Aon Hewitt approved intermittent FMLA leave for Perry's essential tremor on April 12, 2012. R. 36-26 (Ex. 26 4/12/12 Claim Approval Letter) (Page ID #416). The intermittent leave period extended from April 2, 2012 through October 2, 2012. *Id*. Aon Hewitt's approval letter provided instructions for how to utilize intermittent leave:

> When you are away from work due to your intermittent leave, you are required to contact [Aon Hewitt] to report your absences. Refer to the enclosed How to Report Intermittent Absences for specific instructions. In addition, you must also contact your manager/supervisor to report any absences, consistent with any established policy for reporting absences in your department or unit.

*Id.* The enclosed "How to Report Intermittent Absences Form" provided specific instructions for reporting absences to Aon Hewitt. R. 36-27 (Ex. 27 Absences Form) (Page ID #419). Perry also does not dispute that she received this information. R. 42 (Pl. Resp. to Def. Statement of Undisputed Facts at 10) (Page ID #632).

**D. FMLA Leave for 2012 Fall From Ladder**

In May 2012, Perry was injured after falling off of a ladder at home. R. 36-29 (Ex. 29 Health Certification) (page ID #425). On June 6, 2012, Dr. Brett Darwin certified that Perry needed continuous FMLA leave for this injury, beginning on May 22, 2012 and lasting until June 28, 2012. *Id.* The Red Cross approved Perry's request for FMLA leave during these dates. R. 36-30 (Ex. 30 Claim Approval Email) (Page ID #427). Perry's continuous leave was eventually extended until July 9, 2012. R. 36-31 (Ex. 31 6/28/12 Holmes Email) (Page ID #429). Darwin

provided Perry with a doctor's note on May 24, 2012, stating that Perry "[n]eeds to [a]void lifting over 8 pounds for [at] least a week [and] [n]o repetitive bending." R. 43-12 (Ex. 12 Darwin Note) (Page ID #881). Perry states that, upon her return to work, her supervisor Malinda Majors told Perry to lift a box that Perry insisted that she could not lift. R. 36-11 (Ex. 11 Perry Dep. Excerpts at 80) (Page ID #357).

**E.  Perry's Additional Heart and Lung Issues**

Perry also has further illnesses related to her heart and lungs. Perry states that she suffers from "cardiac entrapment" episodes, which cause her to feel fatigued and "get in a position [where] you can't move, you can't breathe, you can't talk." R. 45-2 (Ex. 1 Perry Dep. Part Two at 102) (Page ID #1051). Perry claims to have experienced approximately twenty of these episodes while working at the Red Cross. *Id.* Perry also suffers from asthma and emphysema. *Id.* at 103 (Page ID #1052). Perry claims that these conditions affected "walking . . . and transporting items" at work, but that they did not affect her ability to do phlebotomy. *Id.*

Perry did not ask the Red Cross to accommodate her heart or lung conditions. *Id.* at 103–04 (Page ID #1052–53). Perry did request, and was approved for, intermittent FMLA leave "from April 3, 2012 through April 3, 2013" on the basis of a health-care certification from Dr. Clyde Southwell, however. R. 36-21 (Ex. 21 Claim 6516 Approval Letter) (Page ID #400); R. 36-20 (Ex. 20 Southwell Certificate) (Page ID #398). Dr. Southwell's certificate indicates that he performed a "PFT"—presumably a "pulmonary function test"—on April 9, 2012, and that

6

Perry needed intermittent leave due to "Chronic Conditions Requiring Treatment." R. 36-20 (Ex. 20 Southwell Certificate) (Page ID #398).

Perry's April 2012 approval letter for intermittent leave includes the same instructions for contacting Aon Hewitt and her supervisor in order to utilize FMLA intermittent leave. R. 36-21 (Ex. 21 Claim 6516 Approval Letter) (Page ID #400).

**F. Perry's July 31, 2012 Termination**

The Red Cross follows a progressive disciplinary policy regarding absenteeism. R. 36-2 (Ex. 2 Handbook at 13) (Page ID #320). The Employee Handbook provides that "[e]mployees experiencing more than **three incidents** . . . per year, **excluding** qualified Family and Medical Leave, or pre-planned and pre-approved time off such as vacation, doctor, dental and other appointments . . . are subject to disciplinary action." *Id*. An "[i]ncident" is "one or more days absent from work for the same cause." *Id.*; *see also* R. 45-7 (Ex. 6 Yakoumis Dep. at 71) (Page ID #1294) ("[Absenteeism] is any unscheduled time off that is not as a result of FMLA"). After an employee accrues four incidents within a "rolling 12 month period," they are given a verbal warning. R. 36-2 (Ex. 2 Handbook at 13) (Page ID #320). Five incidents in a twelve month period results in a written warning, six results in a "Final Written Warning," and seven results in termination. *Id.*

Majors progressed Perry to the first step of the discipline policy on April 21, 2011 for four "incidents." R. 36-6 (Ex. 6 Verbal Warning at 1–3) (Page ID #336–38). On June 15, 2011, Yakoumis gave Perry her first written warning after she accrued another set of absences. R. 36-7

(Ex. 7 Written Warning at 1) (Page ID #340). Majors progressed Perry to a second written warning on October 4, 2011 for two additional unscheduled absences. R. 36-8 (Ex. 8 Second Written Warning at 1) (Page ID #343). Because two of her earlier absences fell outside of the rolling twelve-month window, Perry's total "incident" count stood at five. *Id.* Yakoumis gave Perry her final written warning on January 17, 2012, bringing her total "incident" count to six. R. 36-9 (Ex. 9 Final Written Warning) (Page ID #347).

Yakoumis prepared a Termination Memo on July 27, 2012, after Perry received a seventh incident on that date. R. 36-10 (Ex. 10 Termination Memo) (Page ID #350). The termination memorandum provides the following dates of unscheduled absences, along with the corresponding reason that Perry provided for her absence, *see* R. 45-7 (Ex. 6 Yakoumis Dep. at 95–96) (Page ID #1300):

- October 03, 2011: "[H]urt neck over the weekend"
- January 13, 2012: "Left without notice—did not work"
- April 24, 2012: "[S]ick"
- May 5, 2012: "Sick"
- May 21, 2012: "Sick"
- July 24, 2012: "Food poisoning"
- July 27, 2012: "[O]verslept—not coming in."

36-10 (Ex. 10 Termination Memo) (Page ID #350). Prior to issuing the memorandum, Holmes confirmed that none of the dates listed in the termination memo "were reported as FMLA protected." R. 36-34 (Ex. 34 7/27/2012 Yakoumis Email at 1) (Page ID #439); *see also* R. 45-7 (Ex. 6 Yakoumis Dep. at 101) (Page ID #1301). Matthew Carver, the Director of Collections, and Timothy Ryerson, the Chief Executive Officer, approved Perry's termination on July 31,

2012. R. 36-1 (Ex. 1 Carver Decl. at 1–2) (Page ID #316–17); R. 36-35 (Ex. 35 Ryerson Decl. at 1–2) (Page ID #444–45).

## G. Procedural History

Perry filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on January 2, 2013. R. 36-37 (Ex. 37 EEOC Charge at 1) (Page ID #449). Perry's charge provided July 31, 2012, her date of termination, as both the "Earliest" and "Latest" date that the discrimination against her took place. *Id.* She alleged discrimination based upon her disability and for retaliation for "reporting a supervisor." *Id.*

After being issued a right to sue letter, Perry filed a complaint against the American Red Cross, Nashville Chapter, in the United States District Court for the Middle District of Tennessee on October 16, 2013, alleging violations of the ADA, FMLA, and Tennessee state law. R. 1 (Compl. at 1) (Page ID #1). Perry amended her complaint on January 28, 2014, substituting the American Red Cross Blood Services, Tennessee Valley Region, as the defendant and removing the Tennessee state-law claims. R. 9 (Am. Compl. at 1) (Page ID #21).

The Red Cross moved for summary judgment on January 9, 2015, R. 35 (Mot. for Summ. J. at 1) (Page ID #289), and Perry responded on February 11, 2015. R. 48 (Pl. Mem. in Opp. To Def. Mot. for Summ. J. at 1) (Page ID #1420). On March 26, 2015, the district court granted summary judgment in favor of the Red Cross. R. 51 (D. Ct. Op. at 1) (Page ID #1506). First, the district court found that Perry had not demonstrated that she was "disabled" for purposes of the ADA. *Id.* at 4–5 (Page ID #1509–10). Second, even if Perry is disabled, she failed to exhaust

her administrative remedies regarding her accommodation claims because her EEOC charge "does not mention failure to accommodate." *Id.* at 6 (Page ID #1511). Third, even if Perry exhausted her administrative remedies, her claims regarding her 2010 foot surgery were time barred. *Id.* Fourth, the district court held that the Red Cross did not violate the ADA because Perry was fired based "on her absenteeism, not on any perceived or alleged disability." *Id.* at 7–8 (Page ID #1512–13). Fifth, Perry failed to establish that the Red Cross interfered with her rights under the FMLA because Perry "was granted FMLA leave" and she agreed "that she failed to report the absences upon which her termination was based." *Id.* at 10 (Page ID #1515). Finally, the district court held that Perry failed to establish that the Red Cross retaliated against her for taking FMLA leave. *Id.* at 11 (Page ID #1516). Perry timely appealed. R. 62 (Notice of Appeal at 1) (Page ID #1564).

## II. DISCUSSION

### A. Standard of Review

We review a district court's grant of summary judgment de novo. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**B. ADA Claims**

Perry argues that the district court erred in holding that the Red Cross did not violate the ADA. The ADA prohibits covered employers from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1104–05 (6th Cir. 2008) (quoting 42 U.S.C. § 12112(a)). Perry asserted both an ADA-accommodation claim and an ADA-termination claim in the district court.

**1. ADA Accommodation**

Perry argued in the district court that the Red Cross violated the ADA in failing to accommodate her disabilities. R. 48 (Pl. Op. to Def. Mot. for Summ. J. at 21) (Page ID #1440). Under the ADA, it is unlawful discrimination for an employer to fail to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). The district court did not err in granting summary judgment to the Red Cross.

First, Perry has waived her accommodation argument on appeal. The district court dismissed Perry's ADA-accommodation claim, in part, because she failed to exhaust her

11

administrative remedies. *See* R. 51 (D. Ct. Op. at 6) (Page ID #1511). Perry's brief provides, in her "Statement of the Case," that she "exhausted her administrative remedies through the EEOC." Appellant Br. at 8. But Perry does not develop this argument at any other point in her brief. As the Red Cross contends, "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Gradisher v. City of Akron*, 794 F.3d 574, 586 (6th Cir. 2015) (internal quotation marks omitted); *see also* Appellee Br. at 16. Because Perry's brief fails to present "developed argumentation" on this claim, *Gradisher*, 794 F.3d at 586, she has waived her accommodation claim on appeal.[2]

Second, even if Perry has not waived her claim, the district court correctly dismissed Perry's accommodation claim for failure to exhaust. "Federal courts do not have subject matter jurisdiction of [ADA] claims unless the claimant explicitly files the claim in an EEOC charge or the claim can reasonably be expected to grow out of the EEOC charge." *Jones v. Sumser Retirement Vill.*, 209 F.3d 851, 853 (6th Cir. 2000) (internal quotation marks omitted). In *Jones*, the plaintiff's EEOC "charge did not explicitly allege that Sumser failed to accommodate her disability" in violation of the ADA. *Id.* Rather, her EEOC charge "specifically alleged only a termination claim" and provided only the date of her alleged termination as the date of

---

[2]Further, to the extent that Perry asserts an ADA-retaliation claim, she has also waived this claim on appeal. The district court originally held that Perry explicitly conceded her ADA retaliation claim. R. 51 (D. Ct. Op. at 1 n.1) (Page ID #1506). Perry then submitted a Rule 59(e) Motion to Amend the Judgment, stating that although her initial Motion in Opposition to Summary Judgment conceded her retaliation claim, she filed a corrected response by leave of court, and this response did not concede her retaliation claim. R. 54-1 (Rule 59(e) Motion at 2–3) (Page ID #1522–23). The district court agreed that Perry's corrected response did not concede her ADA retaliation claim, but the district court proceeded to reject this claim on the merits and deny Perry's Rule 59(e) motion. R. 58 (Order Denying Rule 59(e) Motion at 2–4) (Page ID #1554–56). Perry's appellate brief does not make any mention of her ADA retaliation claim, and the Red Cross is correct that this claim is waived. *See* Appellee Br. at 15–16.

discrimination, not "the date of the alleged failure to accommodate." *Id.* at 853–54. We held that Jones failed to exhaust her administrative remedies as related to her failure to accommodate claim because "[a] termination claim differs in kind and date from an accommodation claim." *Id.* at 854.

The same is true here. Perry's EEOC charge lists her date of termination as both the "Earliest" and "Latest" date that the alleged discrimination took place. R. 36-37 (Ex. 37 EEOC Charge at 1) (Page ID #449). Further, it states only that her "employment was terminated," that the "reason given for [her] discharge was excessive call ins and absenteeism," and that she "believe[s] that [she] was discriminated against on the basis of [her] disabilities, and retaliated against for reporting a supervisor, in violation of the [ADA]." *Id.* Like the EEOC charge at issue in *Jones*, Perry's charge does not mention failure to accommodate, nor does it list any dates other than the date of her termination. *See Jones*, 209 F.3d at 853–54. Accordingly, Perry has failed to exhaust her administrative remedies for an ADA-accommodation claim, and we lack subject-matter jurisdiction.

## 2. ADA Termination

Perry also argues that the district court erred in granting summary judgment on her claim that she was terminated on the basis of her disability, in violation of the ADA. A plaintiff may establish a disability-discrimination claim under the ADA through either direct or circumstantial evidence. *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 452 (6th Cir. 2004). A plaintiff using circumstantial evidence must satisfy the burden-shifting framework established in *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 433 (6th Cir. 2014). Under this framework, the plaintiff must first establish a prima facie case of discrimination. "To prove a prima facie case of disability discrimination, a plaintiff must show that (1) he is disabled, (2) he is otherwise qualified to perform the essential functions of a position, with or without accommodation, and (3) he suffered an adverse employment action because of his disability." *Id.* "Once a plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason' for its actions." *Talley*, 542 F.3d at 1105 (quoting *McDonnell Douglas*, 411 U.S. at 802). If the employer satisfies "its burden, the plaintiff must show by a preponderance of the evidence that the proffered explanation is a pretext for discrimination." *Id.*

Perry contends that the Red Cross violated the ADA by discriminating against her on the basis of "five disabilities (1) pain in her foot following a procedure in September 2010; (2) injuries caused by a fall from a ladder in May 2012; (3) essential tremor; (4) heart conditions, including cardiac entrapment and mitral valve prolapse; and (5) lung conditions, including asthma and emphysema." R. 42 (Pl. Resp. to Def. Statement of Undisputed Facts at 6) (Page ID #628). In granting summary judgment, the district court found that Perry could not demonstrate that these injuries and illnesses "substantially limited [Perry] in a major life activity," and thus Perry had failed to establish that she is "disabled." R. 51 (D. Ct. Op. at 4–5) (Page ID #1509–10). We need not decide whether Perry is "disabled" within the meaning of the ADA, however,

because even on the assumption that Perry has demonstrated a prima facie case of disability discrimination, Perry has not established pretext. The Red Cross has articulated a legitimate, nondiscriminatory reason for firing Perry: Perry violated the Red Cross's absenteeism policy. Appellee Br. at 48. Accordingly, the burden shifts to Perry to demonstrate that this reason is pretext for unlawful discrimination. *See Talley*, 542 F.3d at 1105. "A plaintiff may demonstrate pretext by showing that the proffered reason had no basis in fact, the proffered reason did not actually motivate the discharge, or, the proffered reason was insufficient to motivate discharge." *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1048–49 (6th Cir. 1998). Perry cannot establish pretext under any of these methods.

Perry contends that because several of the absences for which she was terminated were covered by FMLA, the Red Cross's stated reasons for terminating her were insufficient to motivate her discharge. Appellant Br. at 31–32. But this is not supported by the record. As discussed above, the Red Cross handbook sets forth the company's absenteeism policy. R. 36-2 (Ex. 2 Handbook at 13) (Page ID #320). Employees "experiencing more than **three incidents** . . . per year, **excluding** qualified Family and Medical Leave, or pre-planned and pre-approved time off . . . are subject to disciplinary action" on a progressive basis. *Id.* As Yakoumis confirmed in his deposition, absenteeism under the company's policy "is any unscheduled time off that is not as a result of FMLA." *See* R. 45-7 (Ex. 6 Yakoumis Dep. at 71) (Page ID #1294). This is undoubtedly a harsh policy, but Perry accrued seven unscheduled absences in a twelve-month period, and this qualified her for termination. *See* R. 36-10 (Ex. 10 Termination Memo)

(Page ID #350). Perry does not dispute that she received instructions that she must report to both her supervisor and to Aon Hewitt in order to take FMLA leave. R. 42 (Pl. Resp. to Statement of Undisputed Facts at 4) (Page ID #626). Perry also agreed in her deposition that she "didn't call [Aon Hewitt] to tell them [she wasn't] coming in." R. 45-2 (Ex. 1 Perry Dep. Part Two at 157) (Page ID #1101); *see also* R. 42 (Pl. Resp. to Statement of Undisputed Facts at 18) (Page ID #640). Accordingly, it is undisputed that the absences for which Perry was fired were all unscheduled and that Perry did not call Aon Hewitt to request FMLA-related leave for any of the dates.

Moreover, Perry has not established that these absences would have qualified for FMLA leave even had she appropriately called in. Perry contends that she "went to the ER with chest pain after a cardiac entrapment episode at work" on May 5, 2012. Appellant Br. at 37. She states that she "had already been approved for intermittent FMLA for her heart conditions" and that "[t]his should have been an excused FMLA absence." *Id.* But even on the assumption that Perry was approved for intermittent FMLA leave related to her heart at the time of her ER visit, the record does not support Perry's claim that she visited the hospital on May 5th or that she visited for a "cardiac entrapment" episode. Rather, the record contains a hospital note from May 4, 2012. R. 45-19 (Ex. 18 Doctor's Notes at 8) (Page ID #1374). This note states that Perry visited the hospital for "[d]yspnea," "[a]cute bronchitis," and "[a]cute exacerbation of COPD," none of which relate to her heart. *Id.* Perry stated in her deposition that she does not recall why

16

she was absent on May 5, 2012. R. 33-5 (Ex. 5 Perry Dep. Excerpts at 147) (Page ID #245). And again, Perry did not call Aon Hewitt about this absence.

Similarly, Perry argues that her absence on May 21, 2012 was related to the ladder fall for which she received continuous FMLA leave. Appellant Br. at 37. But Perry's medical documentation from Dr. Darwin supporting her request for FMLA leave provides May 22, 2012 as the "Start Date" for her need for FMLA leave related to this fall. R. 36-29 (Ex. 29 6/6/2012 Darwin Certificate) (Page ID #425). Aon Hewitt subsequently informed Holmes that Perry was approved for FMLA leave beginning on May 22, 2012 and lasting until June 28, 2012. R. 36-30 (Ex. 30 6/22/2012 Email) (Page ID #427). Perry does not dispute that her FMLA leave for her ladder fall was from May 22nd through June 28th. R. 42 (Pl. Resp. to Def. Statement of Undisputed Facts at 11) (Page ID #633). Accordingly, Perry has no documentation in the record that supports her argument that her May 21st absence was FMLA eligible.

Perry also contends that her July absences are related to her essential tremor and thus were covered by intermittent FMLA leave. Appellant Br. at 37. Her absence on July 24 was a result of food poisoning. R. 33-5 (Ex. 5 Perry Dep. Excerpts at 148) (Page ID #246). Perry contends that, because of her food poisoning, she could not take her tremor medication. Appellant Br. at 37. There is nothing in the record to support this, however. With regards to her later absence on July 27, Perry stated in her response to the Red Cross's statement of undisputed facts that she "has no recollection of a call-in that she overslept," but that the "date is closely related to her illness from food poisoning." R. 42 (Pl. Resp. to Def. Statement of Undisputed

17

Facts at 19) (Page ID #641). And even assuming that these could be tied to her essential tremor, and thus her intermittent FMLA leave, Perry admits that she did not call Aon Hewitt to take FMLA-related leave. *See id.* at 13 (Page ID #635).

In sum, the record demonstrates that Perry had seven unscheduled absences and that this was sufficient to support her termination. Further, Perry does not dispute that "[i]n the 18 months leading up to Perry's termination, the Red Cross terminated every employee who violated its absenteeism policy, including all employees who had seven unscheduled absences in a rolling 12-month period." R. 42 (Pl. Resp. to Def. Statement of Undisputed Facts at 6) (Page ID #628). Perry has not demonstrated pretext on this basis.

Perry also cannot demonstrate pretext to the extent that she relies on Majors's alleged actions and statements. Perry argues that Majors once "prevented Ms. Perry from leaving work when she explained that she was not feeling well" and that on one occasion, Majors refused to call an ambulance when Perry had a cardiac entrapment episode at work. Appellant Br. at 32. Perry claims that this demonstrates discriminatory animus, and thus is evidence that the Red Cross's reasons for her termination are pretextual. *Id.* Perry does not dispute, however, that Majors played no role in her termination. R. 42 (Pl. Resp. to Def. Statement of Undisputed Facts at 17) (Page ID #639). Nor does Perry explain how these incidents otherwise relate to the Red Cross's decision to fire her or enforce its attendance policy. Even drawing all inferences in Perry's favor, this does not create a genuine issue of material fact as to pretext. Accordingly, the

18

district court appropriately granted summary judgment to the Red Cross on Perry's ADA termination claim.

## C. FMLA Claims

Perry also raises claims under the FMLA. The FMLA entitles an employee "to take up to twelve weeks of leave during any twelve month period '[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Demyanovich*, 747 F.3d at 427 (quoting 29 U.S.C. § 29612(a)(1)(D)). A "serious health condition" under the FMLA is "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). Perry states that the Red Cross violated the FMLA under both an "interference" theory and a "retaliation" theory. *See Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012).

### 1. FMLA Interference

Section 2615(a)(1) of the FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" rights under the statute. 29 U.S.C. § 2615(a)(1); *see also Donald*, 667 F.3d at 761. The *McDonnell Douglas* burden-shifting framework applies to FMLA interference claims. *See Donald*, 667 F.3d at 761–62. In order to establish a prima facie case of FMLA interference, Perry must establish that

> (1) she was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled.

19

*Id.* at 761 (internal quotation marks omitted). Perry argues that the Red Cross interfered with her rights under the FMLA because it fired her for "excessive absences" despite those absences being "FMLA protected medical leave." Appellant Br. at 36. Perry again argues that her May 5th absence was as a result of her heart condition, and thus covered under FMLA leave. *Id.* at 37. She also contends that her ladder fall on May 21 is covered by FMLA leave. *Id.*

This does not establish that Perry was denied "FMLA benefits to which she was entitled." *Donald*, 667 F.3d at 761 (internal quotation marks omitted). As discussed above, Perry did not visit the hospital on May 5th, and her visit on May 4th was not related to her heart condition. Nor does the record demonstrate that Perry was entitled to FMLA leave on May 21, 2012: Perry does not dispute that her FMLA coverage for her ladder fall began on May 22nd, consistent with her doctor's FMLA certification form. And again, even on the assumption that she was entitled to FMLA leave for any of these absences, Perry did not call Aon Hewitt to report any of the listed absences as FMLA leave.

Perry contends, however, that the district court erred in relying on the fact that she did not comply with the Red Cross's call-in policy. According to Perry, "once an employer is on notice that FMLA leave may apply, it has the burden to seek further information regarding said leave" and that she was not required to specify to the Red Cross that her absences were FMLA related. Appellant Br. at 38–40 (emphasis omitted). This is not persuasive. "FMLA regulations effective January 16, 2009 . . . explicitly permit[] employers to condition FMLA-protected leave upon an employee's compliance with the employer's usual notice and procedural requirements, absent

20

unusual circumstances." *Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 614 (6th Cir. 2013); *see* 29 C.F.R. § 825.302(d) (foreseeable FMLA leave); *id.* at § 825.303(c) (unforeseeable FMLA leave). This includes "requir[ing] employees to call a designated number or a specific individual to request leave." *Id.* at § 825.303(c). According to the regulations, "[u]nusual circumstances would include situations such as when an employee is unable to comply with the employer's policy . . . because on the day the employee needs to provide notice of his or her need for FMLA leave there is no one to answer the call-in number and the voice mail box is full." *Id.* at § 825.302(d).

Perry has not provided any evidence of "unusual circumstances" excusing her from following the Red Cross's policy, nor has she provided any evidence that the policy was selectively enforced or that, if she were to call in, she would need to use "magic words" in order to receive FMLA leave. To the contrary, Perry was on notice that she needed to call Aon Hewitt, and it is undisputed that she did not do so. Accordingly, summary judgment is appropriate in favor of the Red Cross.

## 2. Retaliation

In addition to preventing an employer from interfering with an employee's rights under the statute, the FMLA also "prohibits an employer from 'discharg[ing] or in any other manner discriminat[ing] against any individual for opposing any practice made unlawful'" by the statute. *Donald*, 667 F.3d at 761 (quoting 29 U.S.C. § 2615(a)(2)). In order to establish a prima facie case of FMLA retaliation, Perry must establish:

> (1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Id.* (internal quotation marks omitted). According to Perry, "the reason of 'excessive call-ins' was used as a pretext for her termination, when in fact she was intentionally and unfairly discriminated against on the basis of her requests for medical leave and use of medical leave pursuant to the [FMLA]." Appellant Br. at 34. Her reasons in support of her retaliation claim, however, are identical to the reasons supporting her interference claim: that she was fired for absences for which she was FMLA approved. *See id.* at 35. As discussed above, the record does not support this assertion.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment to the Red Cross.