NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0134n.06

No. 24-3267

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Mar 10, 2025
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| DANIEL K. WOODIE, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| MOTOROLA SOLUTIONS, INC, | ) | SOUTHERN DISTRICT OF |
| | ) | OHIO |
| Defendant-Appellee. | ) | OPINION |
| | ) | |

Before: KETHLEDGE, LARSEN, MATHIS, Circuit Judges.

LARSEN, J., delivered the opinion of the court in which KETHLEDGE, J., concurred. MATHIS, J. (pp. 12–18), delivered a separate opinion concurring in part and dissenting in part.

LARSEN, Circuit Judge. Daniel Woodie, who has nocturnal epilepsy, worked as a systems technologist for Motorola Solutions from 2013 until his termination in 2021. Woodie sued Motorola, raising three claims of employment discrimination: failure to accommodate, disability discrimination, and retaliation. The district court granted summary judgment to Motorola. We AFFIRM.

I.

Daniel Woodie began working for Motorola Solutions, Inc., as a Federal Systems Technologist in 2013. Woodie's work was primarily done outside of the office at customer sites. Until March 1, 2020, systems technologists traveled about 75% of the time and sometimes had to work weekends. But beginning in March 2020, Motorola required technologists to travel 80% of the time. Woodie was unhappy with the additional travel and asked his supervisors on several

occasions to return to the prior arrangement. Woodie initially asked on behalf of all the systems technologists. He later told a supervisor that the new travel schedule was "not sustainable" and would lead to the loss of technologists. R. 16-5, PageID 949.

Around July 2019, Woodie informed his immediate supervisor, Wes Pellum, that he had nocturnal epilepsy. Pellum directed Woodie to the company's Occupational Health Resources department (OHR) in the event he needed any accommodations because of the epilepsy. Pellum also offered to contact OHR for Woodie. Woodie declined an accommodation; he stated that he didn't "expect to need any special accommodation[s] but it [was] good to know there is someone to reach out to if it were needed." R. 15-1, PageID 320. In June or July 2020, Woodie told Motorola that he needed a schedule change "because of [his] health." *Id.* at 341. Samantha Heagney, a Human Resources Business Partner, told Woodie that he could "always apply for a reasonable accommodation if needed" and gave him the company's Reasonable Accommodation Policy, which contained instructions on how to file a request. R. 15-5, PageID 664–65. Woodie declined and said, "I understand that but at the same time I [don't] really want to be treated differently. I just wanted to be treated fairly." *Id.* at 665.

Beginning in November 2020, Woodie increased his demands for a schedule change. He asked Mauro Morin, his group leader, for a reduced travel schedule on multiple occasions. Morin told Woodie to speak with Pellum and another supervisor, Joe Caputo, since Morin didn't have control over the schedule. Woodie originally explained that he disliked the schedule because "he was missing weekends at home," but he later told Morin that his epilepsy was affecting his sleeping. R. 14-3, PageID 282–83. As for the latter point, Morin told Woodie that he should direct any accommodation requests to OHR. During this time, Woodie also asked Caputo twice for a reduced travel schedule. Caputo told Woodie that he had to work as directed but if he needed an

accommodation, he should speak to OHR. Woodie never requested an accommodation through OHR while employed at Motorola.

Throughout his time at Motorola, Woodie's supervisors had to counsel him on performance and behavioral issues. Woodie apparently didn't "understand [his] place" in the company, trying to do work on projects that were best left for the sales department or a project manager, not a systems technologist. R. 15-1, PageID 342, 346. Morin also had to speak with Woodie about his interactions with customers and coworkers. Morin first did so in July 2019, explaining that he had received a request to remove Woodie from a project because of conflicts with both staff and customers. Even after these conversations, Woodie continued to clash with coworkers and customers, resulting in his being removed from three projects. Woodie also clashed with his supervisors and threatened to quit or find other employment when things weren't going his way. In September 2020, and again in December 2020, management had to speak with Woodie about the need to "understand[] our roles within the teams and how to interact" with others. R. 14-2, PageID 264–65; R. 15-1, PageID 343. Later, during his deposition, Woodie acknowledged that his behavior was unacceptable.

After no improvement in Woodie's behavior, Motorola terminated his employment on May 22, 2021. Motorola classified the termination as without cause, which left open the possibility that Woodie could be rehired. Woodie received an employment offer from another company the day after his termination; he began work elsewhere one month later.

Woodie sued Motorola, bringing claims under the American with Disabilities Act (ADA) and the Ohio Civil Rights Act for failure to provide reasonable accommodations, disability discrimination, and retaliation. Motorola moved for summary judgment. The district court granted the motion as to all claims. Woodie now appeals.

II.

We review de novo the district court's summary judgment decision. *Franklin Am. Mortg. Co. v. Univ. Nat'l Bank of Lawrence*, 910 F.3d 270, 275 (6th Cir. 2018). "[S]ummary judgment is warranted only if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (citations omitted).

A.

Woodie first challenges the district court's grant of summary judgment to Motorola on his failure-to-accommodate claim.[1] On this claim, Woodie "bears the initial burden of making out a prima facie case." *King v. Steward Trumbull Mem'l Hosp., Inc.*, 30 F.4th 551, 560 (6th Cir. 2022). To make a prima facie case, Woodie "must show that (1) [he] was disabled within the meaning of the statute; (2) [he] was otherwise qualified for [his] position, with or without reasonable accommodation; (3) the defendant knew or had to reason to know about [his] disability; (4) [he] requested an accommodation; and (5) the defendant failed to provide the necessary accommodation." *Id.* (citation omitted). Only after an employee requests an accommodation must the employer start an interactive process to determine if the employee is disabled and whether accommodations are necessary. *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 669 (6th Cir. 2020).

Like the district court, we focus on whether Woodie requested an accommodation under the ADA. The employee bears "the initial burden of requesting an accommodation." *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046 (6th Cir. 1998). There is some flexibility in how an employee may do this. *King*, 30 F.4th at 564. But "[w]e have consistently held that an employer is not obligated to provide accommodation until the plaintiff had provided a proper diagnosis of

---

[1] The parties treat Woodie's federal and state law claims as the same, so we do too.

her disability and requested specific accommodation." *Kirilenko-Ison*, 974 F.3d at 670 (cleaned up).

Motorola was not required to provide an accommodation because Woodie never requested one. Many of Woodie's requests for a schedule change had nothing to do with his disability. Woodie was unhappy with the additional travel and asked his supervisors on several occasions to return to the prior 75% travel arrangement. Woodie initially asked on behalf of all the systems technologists. He told a supervisor that the new travel schedule was "not sustainable" and would lead to the loss of technologists. R. 16-5, PageID 949. Another time he explained that he wanted a reduced travel schedule because "he was missing weekends at home." R. 14-3, PageID 282–83.

That said, there can be no doubt that Woodie, on several occasions, asked his supervisors for a reduced travel schedule because of his disability. Woodie testified that he thought "there were at least four occasions with Mauro Morin and at least two occasions with Joe Caputo" in which he asked for a reduced travel schedule "[b]ecause of [his] medical condition." R. 15-1, PageID 333. Morin recalled Woodie asking for an accommodation because the epilepsy was affecting his sleep. Caputo also recalled having more than one conversation with Woodie about his request for a change in the travel schedule because of his disability. So several of Woodie's schedule-change requests were tied directly to his disability.

But that doesn't end the inquiry. Motorola had a policy for submitting a disability accommodation request. According to the Reasonable Accommodation Policy,

> If the accommodation request is disability-related, [the employee] should consult with Occupational Health Resources . . . . Occupational Health Resources is the department responsible for processing requests for accommodation due to a disability. An employee can request an accommodation by completing a Individuals with Disabilities—Request for Accommodation Form or by contacting Occupational Health Resources. Motorola Solutions will engage in the interactive process to clarify the needs of the individual making the request, and ask questions to try to identify the appropriate reasonable accommodation.

R. 15-5, PageID 666. The policy then reiterates that employees seeking an accommodation "should fill out the appropriate Request for Accommodation Form." *Id.* Woodie acknowledges having read the policy in 2020.

On numerous occasions when Woodie requested a travel change based on his disability, his supervisors and HR directed him to OHR in the event he need an accommodation. Even before requesting travel changes, Woodie told Pellum, his immediate supervisor, that he had nocturnal epilepsy. Pellum directed Woodie to contact OHR if he needed an accommodation, and he offered to contact OHR for him. Woodie declined. When Woodie asked Morin for a schedule change, Morin told him that he didn't have the authority to provide an accommodation for a disability; such a request had to go through OHR. So he told Woodie to contact OHR. Caputo also told Woodie he had to go to OHR to request a disability accommodation. Caputo then notified an "HR person that [he] ha[d] somebody that might be requesting a medical accommodation." R. 14-2, PageID 192. Woodie mentioned his medical condition to Heagney, a Human Resources Business Partner, who told Woodie that he could "always apply for a reasonable accommodation if needed" and gave him the OHR policy. R. 15-5, PageID 664–65. Woodie again declined.

Woodie was thus aware of Motorola's process for requesting a disability accommodation. He was given the policy, and at each turn, his supervisors directed him to contact OHR because only OHR could determine whether Woodie was disabled and needed an accommodation. Caputo contacted HR to inform them of a possible pending request, and Woodie discussed his disability with HR. Despite all of that, at no time in his employment with Motorola did Woodie contact OHR. Woodie thus failed to request an accommodation sufficient to start the interactive process under the ADA. *See Kirilenko-Ison*, 974 F.3d at 670.

Woodie counters that "[a]n employer's idiosyncratic accommodation policies and practices do not vary" the standard for what constitutes an accommodation request. Appellant Br. at 19. But the lone district court opinion he cites does not support this proposition. *See* Appellant Br. at 15 (citing *Chaniott v. DCI Donor Servs., Inc.*, 481 F. Supp. 3d. 712 (M.D. Tenn. 2020)). He offers no caselaw to support his theory that he could sit on his hands and decline to follow Motorola's Reasonable Accommodation Policy when his supervisors repeatedly directed him to do so.

Woodie has not met his burden of establishing that he requested an accommodation under the ADA and thus has not shown that the district court erred by concluding that his failure-to-accommodate claim failed.

B.

Woodie next challenges the district court's grant of summary judgment to Motorola on his disability discrimination claim. Woodie contends that the district court erred by concluding that there was no direct evidence of discrimination. He points to his testimony that "on the termination call [Motorola] did mention my repeated requests for schedule changes, including the individual schedule changes, which . . . effectively is my request for reasonable accommodation." R. 15-1, PageID 348. He also points to an email from Brian Sincora, after Woodie was fired, in which Woodie sought information about his termination. In a previous email, Woodie told Sincora, "I think we should discuss the ADA aspect of my termination, which I suspect you were unaware of when this action was taken." R. 17-1, PageID 1005. In response, Sincora attached a copy of the Reasonable Accommodation Process and Request form, which he noted had been provided to Woodie on several previous occasions. Sincora then told Woodie that "[a] request for a reasonable accommodation follows a specific process;" Woodie "did not follow this process;" and Woodie's "repeated requests of your management to change your schedule does not constitute a reasonable

request." *Id.* at 1010. Later, Sincora testified that defendants had explained to Woodie that his repeated schedule change requests constituted "one of the reasons given" for Woodie's termination. *Id.* at 986.

Woodie says that these statements constitute direct evidence that Motorola fired him "for requesting accommodations for his disability." Appellant Br. at 8. That is not so. Direct evidence is evidence that "requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003) (citation omitted). The statements Woodie offers do not fit the bill. They show that Woodie was fired, in part, for repeatedly requesting a schedule change. But, as explained above, Woodie's schedule-change requests did not amount to requests for an accommodation under the ADA. Indeed, many of them had nothing to do with his disability. And, at every turn, Motorola told Woodie that if he needed an accommodation, all he needed to do was contact OHR. Woodie declined. Woodie has not presented direct evidence of discrimination.

Without direct evidence, Woodie bears the burden of establishing a prima facie case of disability discrimination. *See Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 566 (6th Cir. 2023). If he does so, "the burden shifts to [Motorola] to demonstrate that there was a legitimate, nondiscriminatory reason for the" termination. *Id.* at 567 (citation omitted). At that point, the burden shifts back to Woodie to show that this "reason was actually a pretext designed to mask discrimination." *Id.* (citation omitted).

The district court held that Woodie had failed to establish pretext. We agree. Beyond the repeated requests for a schedule change, Sincora explained that Motorola terminated Woodie's employment due to "a combination of growing discontent with his performance, along with [Woodie] making his desires known that he wanted to depart from the company." R. 17-1, PageID

969. Sincora explained that although he "wasn't directly involved in investigations or matters related to Mr. Woodie," "removal from projects, combative behavior, how he communicated with individuals and otherwise were just some of the issues they had with performance." *Id.* Similarly, shortly after Woodie's termination, Sincora explained to Woodie that he had been let go because "[o]n multiple occasions management has provided you with performance feedback" and "[y]our response to this feedback was to indicate your desire to leave the company." *Id.* at 1010. The record supports these reasons.

As for performance issues, Motorola removed Woodie from several projects between June 2019 and July 2020, due to his inability to work with other employees and customers. In June 2019, a customer dismissed Woodie from a project, complaining to Motorola that, "While I have tolerated [Woodie's] 'greater than thou, I can do no wrong' attitude for the last couple weeks, he has become a cancer that is not productive to your own staff, let alone the whole project." R. 15-5, PageID 739. What's more, Woodie pushed his own pet projects because "[a]pparently, he was not satisfied with Motorola Engineering's response, so he sought to circumvent his chain of command." *Id.* Woodie was then removed from a project for the United States Customs and Border Control because Woodie "used ill-advised tact in dealing with the" customer. R. 15-1, PageID 342. And then Woodie was removed as lead on a project for the United States Secret Service. According to Woodie's own testimony, he "was told that [he] was late several times" (though he disputes the number of times he was late) and "that [he] wasn't necessarily getting along with everybody." *Id.* at 331. The problems didn't stop there, and Motorola continually had to coach Woodie on his communications with coworkers and staff.

What's more, Woodie repeatedly clashed with his supervisors, routinely offering disrespectful and insubordinate comments. Woodie now admits that several of these were wrong

and inappropriate. For example, after he was removed as lead on the Secret Service project, he threatened to leave the team if his supervisor didn't reinstate Woodie as lead. Another time he told a supervisor that he had "an ignorant attitude." R. 15-1, PageID 339. Woodie admitted at his deposition that this statement "was probably inadvisable." *Id.* In another exchange, Woodie demanded that the supervisor convince another supervisor "to admit that he made a mistake and fully retract his actions removing me as lead when he had no business doing so . . . [o]therwise I am considering my options both inside and outside of Motorola." *Id.* According to Woodie's testimony, he "was exaggerating a little bit to get their attention." *Id.* Also during that exchange, Woodie threatened that "[u]nless all outstanding issues I have brought up are resolved very shortly I do not wish to be on the Crown project going forward. I do not appreciate being held hostage on a project." *Id.* He admitted at his deposition: "In hindsight, I would have have—I certainly would not have written it that way. And quite frankly, reading back through a lot of this I feel really bad about the way I was acting at the time." *Id.* at 340. He admitted, "I certainly would not do that today." *Id.* Another time, Woodie called his boss a "liar." *Id.* at 337. He testified, "[T]hat was an ill-advised but accurate statement" but he wished he "had not made it." *Id.*

As for threatening to leave or switch teams, Woodie did so on several occasions. As noted previously, Woodie made a demand of a supervisor and said that "[o]therwise [he was] considering my options both inside and outside of Motorola." *Id.* at 339. He threatened to leave the team on another occasion if he didn't get his way, saying "[i]f anything but" his preferred path forward on a project is exercised, "I will be leaving [the] team as soon as I am able to do so." *Id.* at 345; R. 15-5, PageID 751. Caputo testified that Woodie told him that he was looking for jobs outside of Motorola "[c]ontinuosly throughout his employment." R. 14-2, PageID 239. In sum, there is

ample record evidence to support the reasons given for Woodie's termination—his performance and his desire to leave the team.

Woodie counters by arguing that his performance issues and threats to leave the company were caused by the medication he took for his epilepsy. Yet, Woodie acknowledged at his deposition that he did not tell Motorola that his epilepsy medication had any bearing on his performance or the way he communicated with others until *after* his termination. So this argument has no bearing on whether the reasons provided by Motorola at the time of the termination were pretextual.

Woodie also notes that his termination was designated "not-for-cause," meaning that he was eligible for immediate rehire. Reply Br. at 18. Yet, Woodie offers no case to support his theory that it is pretextual for an employer to terminate an employee for performance issues and his stated desire to leave the company, while still leaving the door open for his eventual return if the right circumstances presented. Accordingly, the district court didn't err by concluding that Woodie had failed to establish pretext and thus dismissing his discrimination claim.

C.

Finally, Woodie challenges the district court's grant of summary judgment to Motorola on his retaliation claim. Absent direct evidence of retaliation, Woodie bears the burden of establishing a prima facie case of retaliation, which includes showing that he "engaged in activity protected" under the ADA. *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013). Because we conclude above that Woodie did not request an accommodation under the ADA, he did not engage in protected activity, and his retaliation claim therefore fails.

\* \* \*

We AFFIRM.

**MATHIS, Circuit Judge, concurring in part and dissenting in part.** I agree with the majority that the district court did not err in granting summary judgment to Motorola Solutions, Inc. on Daniel Woodie's discriminatory-discharge and retaliation claims. But because Woodie requested a reasonable accommodation and genuine fact issues remain about whether Motorola failed to engage in the interactive process, I would reverse the district court's grant of summary judgment to Motorola on Woodie's failure-to-accommodate claim.

**I.**

The Americans with Disabilities Act ("ADA") prohibits employers from discriminating against employees "on the basis of disability." 42 U.S.C. § 12112(a). It also requires an employer to provide reasonable accommodations for the known physical or mental limitations of a qualified employee with a disability, unless the employer can show that the accommodation would create an undue hardship on its operations. *Id.* § 12112(b)(5)(A).

This court uses a direct-evidence test to analyze failure-to-accommodate claims. *Blanchet v. Charter Commc'ns, LLC*, 27 F.4th 1221, 1227 (6th Cir. 2022); *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 416 (6th Cir. 2020) ("[C]laims premised upon an employer's failure to offer a reasonable accommodation necessarily involve direct evidence (the failure to accommodate) of discrimination." (quotation omitted)). Under this framework, a plaintiff must show: "(1) that he is disabled, and (2) that he is otherwise qualified for the position despite his . . . disability: (a) without accommodation from the employer; (b) with an alleged essential job requirement eliminated; or (c) with a proposed reasonable accommodation." *Fisher*, 951 F.3d at 417 (internal quotation marks omitted). A plaintiff must, of course, "propose a reasonable accommodation to succeed." *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 812 (6th Cir. 2020). If the plaintiff makes this showing, the burden shifts to the employer to prove that the "challenged job criterion

is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship." *Fisher*, 951 F.3d at 417 (quotation omitted). The parties do not dispute that Woodie was disabled and that he was otherwise qualified to work as a systems technologist. Whether Woodie established a failure-to-accommodate claim boils down to whether he proposed or requested a reasonable accommodation. *See id.* A jury could find that he did.

## A.

Woodie asked his supervisors to change his work travel schedule to accommodate his disability. Under the ADA, a reasonable accommodation may include "modified work schedules." 42 U.S.C. § 12111(9)(B). Plaintiffs have the "initial burden of requesting an accommodation." *King v. Steward Trumbull Mem'l Hosp., Inc.*, 30 F.4th 551, 564 (6th Cir. 2022) (quotation omitted). To request a reasonable accommodation, an employee need not "use magic words such as 'accommodation' and 'disability.'" *Fisher*, 951 F.3d at 419. Instead, we simply ask whether "a factfinder could infer that [the interaction] constituted a request for an accommodation." *Id.* (alteration in original) (quotation omitted).

Equal Employment Opportunity Commission guidance instructs that "[i]ndividuals may request accommodations in conversation or may use any other mode of communication." *Requesting Reasonable Accommodation*, Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the ADA (October 17, 2002)[1] [hereinafter "EEOC Guidance"]. "Medical documentation is not required," and "[a] plaintiff's own requests, whether written or oral" will suffice. *King*, 30 F.4th at 564.

---

[1] https://www.eeoc.gov/laws/guidance/enforcement-guidance-reasonable-accommodation-and-undue-hardship-under-ada#requesting.

Woodie testified that, starting in November 2020, he requested a reduced travel schedule multiple times because of his disability. Indeed, both of Woodie's supervisors admitted that he asked for work modifications because of his epilepsy. A reasonable jury could find that Woodie's conversations with his supervisors were accommodation requests. *See Fisher*, 951 F.3d at 419. In my view, this should end the inquiry into whether Woodie requested a reasonable accommodation.

True, there were times that Woodie asked to modify his schedule without referencing a disability. But a reasonable jury could still find that Woodie requested a reasonable accommodation.

The majority, however, says that Woodie never requested an accommodation because he did not follow Motorola's accommodation policy. But Woodie's failure to follow Motorola's policy goes to Woodie's participation in the interactive process; it does not impact whether he requested an accommodation. Indeed, the majority cites *Kirilenko-Ison v. Board of Education of Danville Independent Schools*, 974 F.3d 652 (6th Cir. 2020), to support its conclusion that Woodie failed to request a reasonable accommodation. But its reliance on *Kirilenko-Ison* is misplaced.

*Kirilenko-Ison* does not hold that a plaintiff can only request an accommodation if he follows his employer's internal policy for doing so. Instead, it discusses the interactive process, which occurs *after* a plaintiff requests an accommodation. *See id.* at 659–60, 669–70. In *Kirilenko-Ison*, the employer asked the plaintiff to provide medical documentation "during the interactive process." *Id.* at 669. We held that "when a plaintiff voluntarily withdraws from the interactive process based on a defendant's request for verification, the plaintiff fails to show that the defendant denied her requests for accommodations." *Id.* at 670. We did not suggest that the plaintiff failed to request an accommodation. *See id.* Instead, we concluded that the plaintiff did "not demonstrate[] a genuine factual dispute as to the [defendant's] failure to participate in the

*interactive process* in good faith." *Id.* (emphasis added). Here, too, Woodie's failure to follow Motorola's accommodation policy is relevant—not to whether he requested an accommodation—but to whether he caused a breakdown in the interactive process.

**B.**

Once Woodie requested a reasonable accommodation, Motorola "ha[d] a duty to engage in an interactive process." *Fisher*, 951 F.3d at 421 (quotation omitted). This duty "requires *the employer* to initiate an informal, interactive process, in order to identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Bennett v. Hurley Med. Ctr.*, 86 F.4th 314, 331 (6th Cir. 2023) (emphasis added) (internal quotation marks omitted); 29 C.F.R. § 1630.2(o)(3). This process is mandatory and both parties must participate in good faith. *Bennett*, 86 F.4th at 331.

To establish Motorola's failure to engage in the interactive process, Woodie must prove that a reasonable accommodation was (1) "possible" and (2) "could have been identified had [the defendant] engaged in the interactive process." *Id.* (citation omitted). Courts should also "attempt to isolate the cause of the breakdown [in the interactive process] and then assign responsibility." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007) (quotation omitted). Thus, if Woodie caused the breakdown in the process, he cannot recover for Motorola's failure to accommodate or failure to engage in the interactive process. *See id.* at 871–72.

There is a genuine factual dispute about whether Motorola caused the breakdown in the interactive process. Woodie repeatedly requested a reasonable accommodation from his supervisors starting in November 2020. Yet no one at Motorola ever engaged with him to determine an appropriate accommodation, even though Motorola had "a duty [to] inquire further." *Root v. Decorative Paint, Inc.*, No. 23-3404, 2024 WL 4024426, at *4 (6th Cir. Sept. 3, 2024).

True, Woodie's supervisors told him to contact Motorola's human resources department about filing a formal request, which he did not do. Even so, our precedent and EEOC Guidance both suggest that the ADA required Motorola to do more than just refer Woodie to human resources. We have held that an employer participates in the interactive process in good faith when "it readily meets with the employee, discusses any reasonable accommodations, and suggests other possible [accommodations]." *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 203 (6th Cir. 2010). For example, in *Bennett*, the employer engaged in the interactive process when it "repeatedly engaged with [the plaintiff's] suggested accommodations[] [and] consulted with medical experts" about the accommodations as well. 86 F.4th at 332.

On the other hand, in *Fisher*, the employer initially engaged with the plaintiff in identifying a reasonable accommodation. 951 F.3d at 421. But "as [the plaintiff's] need for accommodation became even more apparent," the employer failed to take "any steps that evidenced good-faith participation in the interactive process, such as proposing counter accommodations." *Id.* at 422. We reversed the grant of summary judgment because "a factfinder could conclude that [the defendant] [bore] the responsibility for its failure to respond to [the plaintiff's] renewed requests for accommodation." *Id.*

And in *Talley v. Family Dollar Stores of Ohio, Inc.*, the employer said it would set up a meeting to discuss the plaintiff's reasonable accommodation request, but never did so. 542 F.3d 1099, 1110 (6th Cir. 2008). We concluded that a genuine dispute of fact existed about who was responsible for the breakdown in the interactive process. *Id.*

No one at Motorola ever engaged with Woodie to discuss his reasonable accommodation requests. Instead, his supervisors ignored his requests or only told him to contact human resources. In fact, Motorola engaged with Woodie even less than the employers did with the plaintiffs in

*Fisher* and *Talley*. Thus, a genuine factual dispute exists about whether Motorola breached its "duty [to] inquire further." *See Root*, 2024 WL 4024426, at *4.

Moreover, Woodie's failure to follow Motorola's accommodation policy did not excuse Motorola from engaging in the interactive process. Motorola argues that this case is like *Wilson v. Ohio Department of Mental Health & Addiction Services*, No. 23-3994, 2024 WL 3814047 (6th Cir. Aug. 14, 2024). In *Wilson*, when the plaintiff requested an accommodation, the employer asked her to complete paperwork identifying her requested reasonable accommodation and establishing medical support for it. *Id.* at *3. The plaintiff refused to do so because she had completed other paperwork that she believed covered the same information. *Id.* We held that the failure to provide medical documentation supporting a reasonable accommodation request "amounts to a voluntary withdrawal that precludes [the plaintiff's] claim that the [employer] failed to accommodate her." *Id.* at *4 (citation omitted). We emphasized that the defendant "did not cause a breakdown in the interactive process by establishing a process that [the plaintiff] simply did not like." *Id.* Here, though, after Woodie started requesting an accommodation because of his disability, Motorola never asked that he provide medical documentation to support his claim or otherwise engage with him about his disability and proposed accommodation. Instead, his supervisors simply ignored his requests or referred him to human resources.

An employee's failure to file a formal accommodation request does not end the interactive process. True, "an employer may ask the individual to fill out a form or submit the request in written form," and can also ask that the employee provide "reasonable documentation" related to his disability. *See* EEOC Guidance, at ¶ 3; *Tchankpa*, 951 F.3d at 813. And where the employee's disability or need for accommodation "is not obvious," the employee is not entitled to an accommodation if he refuses to provide such documentation. EEOC Guidance, at ¶ 6. That said,

"the employer cannot ignore the initial request," *id.* at ¶ 3, and "failure by the employer to initiate or participate in an informal dialogue with the individual after receiving a request for reasonable accommodation could [still] result in liability for failure to provide a reasonable accommodation," *id.* at ¶ 6.   That is exactly what Motorola did here—ignore Woodie's initial requests for an accommodation just because he never filled out a form.

All in all, a reasonable jury could find that Motorola failed to engage in the interactive process.  As a result, there is a genuine factual dispute about whether Motorola violated the ADA by failing to discuss Woodie's reasonable accommodation request with him.

**II.**

In sum, the district court erred in granting summary judgment to Motorola on Woodie's failure-to-accommodate claim.  Because the majority holds otherwise, I respectfully dissent.